UNITED STATES of America, Plaintiff,

and

Ann Erwin, et al., Intervening Plaintiffs–Appellants,

v.

CITY OF CHICAGO, et al., Defendants–Appellees.

William C. BIGBY, et al., Plaintiffs–Appellees,

and

Ann Erwin, et al., Intervening Plaintiffs–Appellants,

v.

CITY OF CHICAGO, et al., Defendants–Appellees.

Nos. 88–1959, 88–1961.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 10, 1989.

Decided March 15, 1989.

Rehearing and Rehearing En Banc Denied April 24, 1989.

Kimberly A. Sutherland, Chicago, Ill., for intervening plaintiffs-appellants.

Robert J. Delahunty, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Michael K. Fridkin, Corp. Counsel, Chicago, Ill., for defendants-appellees.

Before POSNER, COFFEY and MANION, Circuit Judges.

POSNER, Circuit Judge.

Ann Erwin and other white female sergeants in the Chicago police force appeal from Judge Marshall's refusal to allow them to intervene in two suits attacking discrimination, and from his subsequent refusal to recuse himself from continuing to preside over the suits.

The first suit, *United States v. City of Chicago*, had been brought in 1973 by the Department of Justice against the City of Chicago. It charged discrimination against blacks, Hispanics, and women in both initial hiring and promotion to sergeant. Judge Marshall granted a final injunction in 1976 that required the City to hire and to promote to sergeant specified percentages of members of these groups. 411 F.Supp. 218 (N.D.Ill.1976), aff'd, 549 F.2d 415 (7th Cir. 1977). The court retained jurisdiction (automatically—see *United States v. Fisher*, 864 F.2d 434, 436–37 (7th Cir.1988)) to ensure compliance with the decree. We later ordered the court to modify it. See 663 F.2d 1354 (7th Cir.1981) (en banc).

The second suit, *Bigby v. City of Chicago*, had been brought in 1980 by black male sergeants who claimed that the examination the City had used in 1977 to determine eligibility for promotion from sergeant to lieutenant was not job-related and had had a disparate (i.e., disproportionately adverse) impact on blacks. The case was assigned

to Judge Marshall, who in 1984 ordered some immediate promotions of black sergeants and in addition directed the parties to work out a new test; jurisdiction again was automatically retained to assure compliance with the decree. The parties developed a new exam, which the City administered in 1987. Of the sergeants taking it 24 percent were black, 72 percent white, and 4 percent Hispanic. But only 17 percent of those who passed the exam were black. (The percentage that passed which was white was 79 percent, and Hispanic 4 percent.) The parties—that is, the black sergeants and the City—were not satisfied with this outcome and decided to change it, first by standardizing for "rater bias" (by assigning the same mean score to each group of exams graded by a different reader) and second by raising the mean score of the black and Hispanic sergeants who had taken the test to that of the white sergeants. As a result of these adjustments the percentage that passed that was black rose to 23.5 and the percentage Hispanic to 4.5 percent, even though the percentage Hispanic that had passed the test before the grades had been changed was the same as had taken it (4 percent). The adjustments in favor of blacks and Hispanics caused the percentage that passed that was white to fall to 71.5.

The City and the black sergeants went to Judge Marshall on March 14, 1988, for authorization to make promotions to lieutenant from a list based on the adjusted test results. Judge Marshall gave his okay on the spot, saying "all I am really interested in is whether the pool out of which the City promotes is a nondiscriminatory pool. I don't care how you select the 200 [the number of sergeants to be promoted to lieutenant]. You can have them arm wrestle or anything else, see." The promotions were made that same day. Forty-six days later, Ann Erwin and other white female sergeants who claim to have been denied promotion to lieutenant because of the post-exam leg-up for the blacks and Hispanics moved to intervene in both cases. Judge Marshall denied the motion as untimely. The City defends Judge Marshall's ground and adds another: intervention is unnecessary because the appellants have filed a separate federal suit against the City—*Erwin v. City of Chicago*, No. 88 C 6927, 1988 WL 135586 (N.D.Ill.1988)—charging it with discrimination against whites in altering the test scores to favor minority sergeants. The City argues that the appellants can get damages in that suit and therefore don't need to intervene in either *United States v. City of Chicago* or *Bigby*.

The appellants challenge not only the denial of their motion to intervene but also Judge Marshall's refusal almost four months later to recuse himself after Mary Mikva—a lawyer for the City who had clerked for Judge Marshall back in 1980 when both cases were pending before him but claims not to have worked on either case during her clerkship—argued on the City's behalf against the motion to intervene. Judge Marshall ordered her off the case, but the appellants argue that this was not enough.

■■■ The appeal from the denial of the motion for recusal is implicitly conditioned on our reversing the denial of the motion to intervene, since unless and until Erwin and her group become parties they cannot appeal from any order in the proceeding other than the denial of that motion. *Marino v. Ortiz*, 484 U.S. 301, 108 S.Ct. 586, 98 L.Ed. 2d 629 (1988). Conditional or not, the appeal is barred by the appellants' failure to file a notice of appeal from Judge Marshall's order denying the recusal motion. Although the doctrine of pendent appellate jurisdiction allows certain orders not appealable in their own right to be reviewed in conjunction with closely related orders that are appealable, see, e.g., *Illinois ex rel. Hartigan v. Peters*, 861 F.2d 164, 166 (7th Cir.1988); *Patterson v. Portch*, 853 F.2d 1399, 1403 (7th Cir.1988), the doctrine has never to our knowledge been used to allow the appeal, without the filing of a notice of appeal, of an order made *after* the appealable order. When the nonappealable order precedes the appealable one, the doctrine sensibly excuses the appellant's failure to have filed a notice of appeal from the first order; for until the later order

was entered, he had no basis for appeal. But a party who wants to appeal an order because of its relation to an order already under appeal can file a notice of appeal from the second order, and should do so, to give the appellee clear and early notice of the scope of the appeal. Cf. *Torres v. Oakland Scavenger Co.,* —— U.S. ——, 108 S.Ct. 2405, 2409, 101 L.Ed.2d 285 (1988); *Allen Archery, Inc. v. Precision Shooting Equipment, Inc.,* 857 F.2d 1176 (7th Cir. 1988) (per curiam). If appropriate, the appellant can ask us then to consolidate the two appeals, and can argue that the second appeal, if from an order otherwise unappealable, should be deemed pendent to the first.

■ Since we have been liberal in allowing mandamus to be used to review rulings on motions to disqualify judges, see, e.g., *Union Carbide Corp. v. U.S. Cutting Service, Inc.,* 782 F.2d 710, 712 (7th Cir.1986); *Maloney v. Plunkett,* 854 F.2d 152, 155 (7th Cir.1988) (dictum), we could construe the request in the appeal brief that we order Judge Marshall to recuse himself as a request that we issue a writ of mandamus. See 28 U.S.C. § 1651(a). But this would not help the appellants. They have already filed a petition for mandamus—and another panel of this court has denied it. See *United States v. City of Chicago,* No. 88–2617 (7th Cir. Sept. 7, 1988) (per curiam).

■ The appeal from the refusal of Judge Marshall to recuse himself must therefore be dismissed, and we turn to the appeal from the order denying intervention. That appeal is without merit insofar as intervention is sought in *United States v. City of Chicago,* the suit brought by the Justice Department back in 1973. Not only was that suit effectively concluded (as far as this case is concerned—for the decree was modified as recently as 1981 in respects not pertinent here) thirteen years ago, but it never had involved either promotion to lieutenant or discrimination against whites. The appellants regard it as an all-purpose vehicle for remedying any form of racial or sexual discrimination involving the Chicago police until the end of

time, or more precisely until the decree entered in 1976 is vacated. Goodness know when that will be. The litigation was still very much alive in the fall of 1988, when Judge Marshall approved another race-adjusted promotion list, this one to sergeant. See *United States v. City of Chicago,* No. 73 C 2080, 1988 WL 128694 (N.D.Ill. Nov. 21, 1988).

We do not view equitable litigation, even of the "institutional reform" variety, in the same light as the appellants. Cf. *Alliance to End Repression v. City of Chicago,* 742 F.2d 1007, 1013, 1019–20 (7th Cir.1984) (en banc). Judge Marshall is not, by virtue of having presided over one case or even many cases involving discrimination in the Chicago police force, the czar, seneschal, pasha, or ombudsman of that force. He is not required to reopen the decree whenever someone complains that the City is again discriminating. Decrees that vest federal district judges with supervisory powers over organs of state or local government are extraordinary, and the goal should be to wind them up as fast as possible rather than to perpetuate them indefinitely through liberal grants of petitions to intervene. The parallel to the interminable equity proceedings mocked in Dickens's novel *Bleak House* will not be missed by those of literary bent.

Our conclusion that intervention in *United States v. City of Chicago* was properly denied is reinforced by the contrast with the circumstances of the appellants' request to intervene in *Bigby,* a request based on Fed.R.Civ.P. 24(a)—intervention of right—rather than Fed.R.Civ.P. 24(b)—permissive intervention. Intervention of right is available when "upon timely application ... the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." That is the claim of the appellants regarding intervention in *Bigby* (a claim whose merits we are about to exam-

ine). But as regards *United States v. City of Chicago,* all that the appellants argue is that their claim has "a question of law or fact in common" with claims in that case, the standard under Rule 24(b)(2). The argument is of doubtful merit unless "question of law or fact in common" is so broadly defined that any two cases of employment discrimination by the same employer (maybe any two cases of employment discrimination, period) could be said to involve a common question of fact or law. But even if meritorious, the argument would be merely an appeal to the discretion of the district judge, and Judge Marshall did not act unreasonably ("abuse his discretion," in legal jargon) in rebuffing the request, given what we said in the last paragraph.

■ The conditions for intervention as a matter of right are satisfied in *Bigby,* however. The subject matter of that suit is the 1987 lieutenants' examination. Erwin and her group did well enough on the exam to have, not a "vested" right, not a property right (see *Bigby v. City of Chicago,* 766 F.2d 1053, 1056–57 (7th Cir.1985), another attempted intervention to challenge the *Bigby* decree, and *United States v. City of Chicago,* 869 F.2d 1033 (7th Cir.1989)), but a confident expectation, of being promoted forthwith to the rank of lieutenant, with higher pay and greater fringe benefits. With respect to the Chicago police force, the law of Illinois requires, "in all cases where it is practicable, that vacancies shall be filled by promotion," with promotions to be determined "on the basis of ascertained merit and seniority in service and [competitive] examination." Ill.Rev.Stat. ch. 24, ¶ 10-1-13. As a practical matter, the top 200 scorers on the 1987 lieutenants' examination were certain to be promoted, and this certainty created an expectation sufficient to qualify under Rule 24(a)(2); for the rule does not require that the intervenor prove a property right, whether in the constitutional or any other sense. See, e.g., *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.,* 386 U.S. 129, 135–36, 87 S.Ct. 932, 936–37, 17 L.Ed.2d 814 (1967); *Bethune Plaza, Inc. v. Lumpkin,* 863 F.2d 525, 530 (7th Cir.1988); *Harris v. Pernsley,* 820 F.2d 592, 600–01 (3d Cir.1987); *Howard v. McLucas,* 782 F.2d 956, 958–59 (11th Cir.1986); *Little Rock School District v. Pulaski County Special School Dist. No. 1,* 738 F.2d 82 (8th Cir.1984) (per curiam); *Natural Resources Defense Council, Inc. v. NRC,* 578 F.2d 1341 (10th Cir.1978); *EEOC v. American Telephone & Telegraph Co.,* 506 F.2d 735, 741–42 (3d Cir.1974). The expectations of Erwin and her group were dashed when the City altered the test results in order to increase the percentage of blacks and Hispanics that passed and the district court approved promotions based on the altered results. That approval impeded the ability of the would-be intervenors to protect their interest in being promoted. Conceivably, the impediment is insuperable. The City has moved to dismiss the independent suit that Erwin and her group have brought against it, arguing that Judge Marshall's action in approving the promotion of the black sergeants cannot be attacked collaterally—because the plaintiffs should have intervened in *Bigby* ! It is disingenuous of the City to argue in *Erwin* that the plaintiffs cannot attack Judge Marshall's decree collaterally and in *Bigby* that they were properly denied intervention because they have filed *Erwin.* But if the City happens to be right that the decree cannot be attacked in *Erwin,* this strengthens the appellants' argument that they must be allowed to intervene in *Bigby* in order to protect their interest—a legal interest, though not a property right—in being promoted.

Let us begin to try to sort out the collateral attack issue. The general rule—the foundation of the doctrine of res judicata—is that a civil decree cannot be collaterally attacked *by a party or by a person in privity with a party.* See, e.g., *Kalb v. Feuerstein,* 308 U.S. 433, 438, 60 S.Ct. 343, 345, 84 L.Ed. 370 (1940); *In re Chicago, Milwaukee, St. Paul & Pac. R.R.,* 738 F.2d 209, 213 (7th Cir.1984); *Insurance Co. of North America v. Bay,* 784 F.2d 869, 873 (8th Cir.1986). These cases do not apply here; Erwin and her group are not parties in *Bigby,* nor are they in privity with any of the parties. They want to *become* parties

—that is why they moved to intervene. We shall consider in a moment a line of cases that would allow the City, even so, to cry "collateral attack." But let us ignore those cases for the moment and assume that the City is correct to argue as it does in *this* case that the decree does not bar the white female sergeants from bringing their own suit for reverse racial discrimination. They have done so. That suit is *Erwin* and in it the plaintiffs argue that the action of the City and the black sergeants in getting together and altering the test scores so that more blacks and Hispanics and fewer whites are promoted is not lawful affirmative action or good-faith compliance with the district court's directive to work out a nondiscriminatory examination, but is gratuitous discrimination against whites by a city that now has a black mayor. Cf. *Britton v. South Bend Community School Corp.*, 819 F.2d 766 (7th Cir.1987) (en banc).

The argument has considerable force (thus weakening the claim for intervention), especially now that "reverse discrimination" is subject to strict scrutiny. *City of Richmond v. J.A. Croson Co.*, — U.S. ——, 109 S.Ct. 706, 102 L.Ed.2d 854 (1989). There never has been a determination that the 1987 exam was racially biased. The fact that blacks happen not to do as well on some examination as whites, or vice versa, does not establish that the examination is discriminatory. *Washington v. Davis*, 426 U.S. 229, 245–46, 96 S.Ct. 2040, 2050–51, 48 L.Ed.2d 597 (1976). There is no iron law of human behavior that every racial or ethnic group will perform equally well on nonbiased examinations in all fields of human endeavor. The black sergeants who are the plaintiffs in *Bigby* worked with the City to develop the test and did not suggest until they saw its results (which one might suppose would be too late) that it was biased in favor of whites. So bias could not be presumed. Yet instead of trying to determine whether the new test was in fact biased, the parties to the decree simply raised the scores of the blacks. And despite the fact that the Hispanics had done just as well on the test as one would have predicted from the percentage of Hispanic

applicants, the test results were altered in their favor too—a highly suspect circumstance under *Croson.* See 109 S.Ct. at 727–28.

■ If the alteration of the test results was actionable discrimination, the City cannot shield itself from liability by invoking Judge Marshall's approval of promotions based on the altered results, especially given his disclaimer concerning the City's method of increasing the percentage of black and Hispanic sergeants that passed the test to the percentage that took it. All he cared about was the bottom line. Whether this was right or wrong (probably wrong, see, e.g., *Los Angeles Dept. of Water & Power v. Manhart*, 435 U.S. 702, 708, 98 S.Ct. 1370, 1375, 55 L.Ed.2d 657 (1978); *Connecticut v. Teal*, 457 U.S. 440, 102 S.Ct. 2525, 73 L.Ed.2d 130 (1982); *Washington v. Electrical Joint Apprenticeship & Training Comm.*, 845 F.2d 710, 713 (7th Cir.1988)), it does not sanctify the method used to change the bottom line, any more than the judge's approval of the promotions would have shielded the City from liability for giving the white applicants knock-out drops to impair their performance on the examination.

But if Erwin and the other white female sergeants can thus prosecute *Erwin* with fair prospects for success, why should they be allowed to intervene in *Bigby*? The answer is that they may not be able to obtain complete—or any—relief in *Erwin* if the decree in *Bigby* remains in force. It may be absurd for the City to argue at the same time that *Erwin* is an impermissible collateral attack on *Bigby* and that, given *Erwin*, the white female sergeants don't need to intervene in *Bigby*, but taken separately each branch of the argument is—arguable. True, if the principles of res judicata are adhered to strictly, then as we have seen the decree in *Bigby* creates no legal impediment to *Erwin*. There is, however, a line of cases which holds that employees adversely affected by a consent decree intended to rectify unlawful discrimination cannot attack the decree in an independent suit charging reverse discrimination. Their only remedy is to intervene in

the proceeding that culminated in the decree; "collateral attack" is forbidden. See, e.g., *Marino v. Ortiz*, 806 F.2d 1144 (2d Cir.1986), aff'd on other grounds, 484 U.S. 301, 108 S.Ct. 586, 98 L.Ed.2d 629 (1988) (per curiam) (the collateral-attack holding was affirmed too—but by an equally divided Court, see *id.* at 587, so the holding is not authoritative outside the Second Circuit); *Striff v. Mason*, 849 F.2d 240, 245 (6th Cir.1988); *Thaggard v. City of Jackson*, 687 F.2d 66 (5th Cir.1982); *Dennison v. City of Los Angeles Dept. of Water & Power*, 658 F.2d 694 (9th Cir.1981); cf. *Deveraux v. Geary*, 765 F.2d 268 (1st Cir. 1985). (*Bigby* became a consent-decree case when the parties agreed on changing the exam grades.) We signed on to this line of cases in *Grann v. City of Madison*, 738 F.2d 786 (7th Cir.1984), although *Dunn v. Carey*, 808 F.2d 555, 559 (7th Cir.1986), looks the other way; see also *County of Orange v. Air California*, 799 F.2d 535, 538–39 (9th Cir.1986). If we adhere to *Grann*, the City's position in *Bigby* crumbles, for these cases make clear that the quid pro quo for forbidding nonparties to mount collateral assaults on consent decrees is allowing them to intervene in consent order proceedings. See, e.g., *Marino v. Ortiz, supra*, 806 F.2d at 1146; *Striff v. Mason, supra*, 849 F.2d at 245.

The *Grann* line of cases has, however, been rejected by the Eleventh Circuit in a thoughtful opinion. See *United States v. Jefferson County*, 720 F.2d 1511, 1517–19 (11th Cir.1983); see also *Reeves v. Wilkes*, 754 F.2d 965, 971 (11th Cir.1985); *In re Birmingham Reverse Discrimination Employment Litigation*, 833 F.2d 1492, 1498 (11th Cir.1987), cert. granted—on the collateral-attack issue only—under the name of *Martin v. Wilks*, —— U.S. ——, 108 S.Ct. 2843, 101 L.Ed.2d 881 (1988); Kramer, *Consent Decrees and the Rights of Third Parties*, 87 Mich.L.Rev. 321 (1988); Comment, *Collateral Attacks on Employment Discrimination Consent Decrees*, 53 U.Chi.L.Rev. 147 (1986). These authorities point out among other things that cases like *Grann* misapply res judicata and cognate principles and are inconsistent with recent Supreme Court dicta, notably in *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529, 106 S.Ct. 3063, 3079, 92 L.Ed.2d 405 (1986). An attack by a nonparty is not collateral; the nonparty did not have his day in court. *Martin v. Wilks* was argued in the Supreme Court in January, so maybe the Court is about to eliminate the intercircuit conflict.

If we overruled *Grann*, the second limb of the city's argument would be rehabilitated: there would be no obstacle to *Erwin*, and this would argue against intervention in *Bigby* (in both *Jefferson County* and *Reeves* denial of intervention was upheld in part because the would-be intervenors were *not* precluded from maintaining their own suit). But the argument would not be decisive. Although there would be no *legal* obstacle to *Erwin*, there would be a practical one. The City is bound by the decree in *Bigby*. If the City fires black and Hispanic lieutenants to make way for Erwin and her group it will open itself to a charge of contempt of the decree. It could still be ordered to pay damages to Erwin and the other white female sergeants if it refused to promote them to lieutenant, see *W.R. Grace & Co. v. Local Union 759, Int'l Rubber Workers*, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983), but damages may not be an adequate remedy for persons seeking a career in the Chicago police force who have seen their chances of promotion impaired, perhaps permanently, by the discriminatory promotion of minority sergeants (you cannot take a captain's test unless you're a lieutenant). See Ill.Rev.Stat. ch. 24, ¶ 10–1–13; cf. *Cox v. City of Chicago*, 868 F.2d 217 (7th Cir.1989). The would-be intervenors are therefore vitally affected by these minority promotions. We think they are entitled to be heard in *Bigby* on the subject of the validity of those promotions, even if the City's effort to get *Erwin* dismissed as an impermissible "collateral attack" fails. Equitable decrees are not to be made without consideration of the interests of third parties who may be affected by the decrees. See, e.g., *Derrickson v. City of Danville*, 845 F.2d 715, 717–19 (7th

Cir.1988); *Kasper v. Board of Election Commissioners*, 814 F.2d 332, 340 (7th Cir. 1987); *United States v. Board of Education*, 799 F.2d 281, 298 (7th Cir.1986); *Duran v. Elrod*, 760 F.2d 756, 759 (7th Cir.1985). These would-be intervenors are third parties who may be vitally, adversely, and irreparably affected by the *Bigby* decree.

But was the motion to intervene timely? Rule 24 requires this, although without specifying time limits. "The purpose of the requirement is to prevent a tardy intervenor from derailing a lawsuit within sight of the terminal. As soon as a prospective intervenor knows or has reason to know that his interests might be adversely affected by the outcome of the litigation he must move promptly to intervene." *United States v. South Bend Community School Corp.*, 710 F.2d 394, 396 (7th Cir. 1983). The City argues that the appellants should have intervened back in 1980, when the *Bigby* suit was brought, or in 1984, when Judge Marshall ordered the parties to work out a new test, or, at the latest, *immediately* after the March 14 hearing, when Judge Marshall approved promotion in accordance with the alteration of the test results—not 46 days later. The first two suggestions are easily dispatched. White sergeants could hardly have intervened back in 1980 or 1984 to defend a lieutenant's examination that discriminated *in favor of whites*, in violation of law. This distinguishes *United States v. City of Chicago*, 796 F.2d 205, 209–11 (7th Cir.1986), where we upheld Judge Marshall's denial, as untimely, of an attempt to intervene in the *City of Chicago* case by persons who had moved to intervene long after the district court had entered orders adverse to their interests. *United States v. City of Chicago*, 798 F.2d 969, 975–77 (7th Cir. 1986), is an almost identical case. And cf. *United States v. New York*, 820 F.2d 554 (2d Cir.1987). Nor could the appellants have been expected to anticipate that the remedial decree in the case would not merely eliminate the discrimination against blacks and Hispanics but introduce blatant discrimination against whites. They could not at that same time have satisfied the additional requirement of showing that the representation of their interests by parties to the suit was inadequate, see Fed.R.Civ. P. 24(a)(1)—or even have shown that they had standing to complain about the decree; the injury would have been too speculative. They would have been laughed out of court on either occasion.

■ The only serious question is whether they dragged their heels after March 14. We think not. It was several days before the would-be intervenors were told that they had not been promoted. They had to retain counsel. They had to retrieve their test results from the City's personnel department to see whether they would have passed the test had it not been for the racial alteration of the results. They had to conduct the reasonable precomplaint inquiry into law and fact required by the amended Fed.R.Civ.P. 11—including reviewing some twenty boxes of court files. They had to prepare the motion to intervene. Six weeks was not an excessive period to do all these things. Nor did Judge Marshall suggest otherwise. Although he phrased the ground for his denial of the motion to intervene in terms of untimeliness, his real ground seems to have been that he was tired of this endless police litigation. That sentiment is understandable, and we repeat our earlier point that Judge Marshall is not the ombudsman of the Chicago police force. But cf. *Robinson v. Rochford*, 691 F.Supp. 1161 (N.D.Ill. 1988). But when a federal judicial decree unexpectedly impairs settled expectations, and does so on what might appear to be arbitrary and discriminatory grounds, the judge is obliged to listen to the victims of the decree when they make prompt application to intervene; and perhaps especially when the victims are themselves a protected group under Title VII and the equal protection clause—women. Decrees requiring discrimination in the name of ending discrimination should be administered with due regard for the interests of those upon whom the decrees bear hardest.

In No. 88–1961 (*Bigby*) the order of the district court denying intervention is reversed with directions to allow the appel-

lants to intervene for purposes of challenging the court's order of March 14, 1988, approving promotions to lieutenant on the basis of racially altered test results. In No. 88–1959, the order denying intervention is affirmed. The appeal from the judge's refusal to recuse himself is dismissed. There will be no award of costs in this court.