UNITED STATES of America, et al.,
Plaintiffs–Appellees,

v.

CITY OF CHICAGO, et al.,
Defendants–Appellees.

Appeal of Jacquelyn KIMBER, et al.

No. 89–2714.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 26, 1990.

Decided March 2, 1990.

Margaret C. Gordon, Gail C. Ginsberg, Asst. U.S. Attys., Anton R. Valukas, U.S. Atty., Nancy K. Needles, Asst. U.S. Atty., Civ. Div., Chicago, Ill., Dennis J. Dimsey, Susan D. Carle, Dept. of Justice, Civil Rights Div., Washington, D.C., for plaintiffs-appellees.

Elizabeth Dale, Kenneth N. Flaxman, Kimberly A. Sutherland, Chicago, Ill., for plaintiffs-appellants.

Judson H. Miner, Corp. Counsel, Robert L. Janega, Ruth M. Moscovitch, Asst. Corp. Counsel, Sarah Vanderwicken, Frederick S. Rhine, Jean Dobrer, Kelly R. Welsh, Asst. Corp. Counsels, Jay M. Kertez, Chicago, Ill., for defendants-appellees.

Before WOOD, Jr., CUDAHY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

In 1973 the United States filed this suit contending that Chicago's Police Department discriminated against black, Hispanic, and female applicants for employment and promotion. The district court agreed and for many years has supervised all testing, hiring, and promotions. Quotas lasting more than a decade greatly changed the composition of the work force. In recent years the City, whose political leadership has changed substantially, has been adjusting test scores in favor of black, Hispanic, and female applicants. See *United States v. City of Chicago*, 870 F.2d 1256 (7th Cir.1989). When in the fall of 1988 the City approached the district judge with a proposal to add a quota in favor of Hispanic and female applicants for sergeant on top of the adjustment, the court demurred. 1988 WL 128694, 1988 U.S.Dist. LEXIS 13242 (N.D.Ill.). It recounted the history of the litigation and the City's new approach and wrote:

> [T]he time has come to end court imposed promotion quotas with respect to the rank of sergeant just as we have ended hiring quotas with respect to patrol officers and promotion quotas with respect to lieutenants. We realize that the gender, racial and ethnic mix of sergeants does not fully reflect the patrol officer mix. But the new examination and roster promotes evenly with the applicant pool and in due course the various levels of rank in the Chicago Police Department will mirror one another. Quotas are anathema to those who are bypassed as a result of them. They have been the most vexatious remedy in this litigation. In our judgment, they should now be terminated.

The district judge left open, however, the possibility of showing that the test in question was discriminatory. The City chose not to appeal from the court's decision concerning quotas; the police union appealed from the order to the extent it allowed promotions from the list established after "standardizing" the scores to favor black, Hispanic, and female applicants.

We interpreted the court's disposition as doing nothing beyond postponing the question whether the sergeant's examination and promotion list was discriminatory. With this understanding, we affirmed the decision not to block promotions from the latest list. *United States v. City of Chicago*, 894 F.2d 943 (7th Cir.1990). Today's appeal is a further challenge to the same decision, by black female patrol officers who sought to intervene for the purpose of taking an appeal and were turned down. These would-be intervenors want to pick up the torch the City dropped and press for quotas on top of "standardized" scores.

Motions to intervene must be "timely", Fed.R.Civ.P. 24(a), and this motion, coming 17 years into the case, threatens to breathe life into a question (quotas) that has been resolved to the satisfaction of the original parties. Judge Marshall thinks that this case should be winding down, as do members of this court. *United States v. City of Chicago*, 894 F.2d 943, 948–49 (concurring opinion); *United States v. City of Chicago*, 870 F.2d at 1259 (comparing the case to the equity proceedings Dickens lampooned in *Bleak House* ). Litigation will have no end if every time the parties resolve amicably (or drop) a point of contention, someone else intervenes to keep the ball in the air. Orders denying applications for intervention are reviewed for abuse of discretion. *NAACP v. New York*, 413 U.S. 345, 366, 93 S.Ct. 2591, 2603, 37 L.Ed.2d 648 (1973). It was not an abuse to deny this application and so bring closer the finale of this exhausting case.

Especially not when the lawyer representing these potential intervenors appeared in 1984 to represent a group of black female officers (the Augustus class) in order to make a similar request for additional quotas. Jacquelyn Kimber, whose name heads the list of those now desiring to intervene, was among these putative intervenors. The judge declined to allow intervention in 1984. We affirmed, *United States v. City of Chicago*, 796 F.2d 205 (7th Cir.1986), concluding that the application was untimely and that black female officers are in any event adequately represented by other parties. Another five years have passed, so the renewed application is five years *less* timely. And the interests of black women are probably better represented now than they were then. By 1984 the United States had lost its enthusiasm for quotas. In 1984 the City had a black mayor and a black chief of police; by 1988 the City was not only adjusting scores in favor of minority officers but also was proposing quotas on top of that adjustment. The new proposals were not enough to suit Kimber and her allies, but they went too far for other parties, who contend that the adjustment is discriminatory.

There can be no doubt that the judge acted within his discretion in saying "no" when another request to intervene came in 1989, after two appeals had been taken and were on the verge of oral argument in this court. In this circuit intervention to take an appeal is permissible only if the original parties' decision to discontinue the battle reflects "gross negligence or bad faith". *United States v. South Bend Community School Corp.*, 692 F.2d 623, 627 (7th Cir. 1982), disagreeing with *Smuck v. Hobson*, 408 F.2d 175 (D.C.Cir.1969) (en banc). See also *United States v. Board of School Commissioners*, 466 F.2d 573, 575 (7th Cir. 1972). Kimber has not established gross negligence or bad faith—has not even argued it, relying instead on *Smuck* as if it represented the law of this circuit.

Bringing this case to conclusion with the existing parties will cause no injustice. If new events amount to discrimination, the courts remain open to fresh litigation to enforce the right of all to be treated without regard to race, sex, and national origin.

*Martin v. Wilks,* — U.S. ——, 109 S.Ct. 2180, 104 L.Ed.2d 835 (1989).

AFFIRMED.

CUDAHY, Circuit Judge, concurring:

I write separately only to comment briefly on the majority's observation that, "By 1984 the United States had lost its "enthusiasm" for quotas." *Supra* at 244. I doubt that there ever has been "enthusiasm" for quotas. They were very necessary evils introduced to correct or offset the severe and enduring injustices of the past.

In most places, until I was almost into middle age, the very suggestion that a black female could be a police officer would have invited psychiatric examination for the suggester, or, at the very least, a hearty gale of laughter. The stereotypical black female in those days was Aunt Jemima. Goals or quotas were absolutely essential to making the first halting moves away from a long-congealed pattern of discrimination toward practices modestly congruent with present-day constitutional standards.

Judge Marshall, who has insightfully and courageously superintended this difficult process, has now decided that the Chicago Police Department is well enough to be taken off the powerful medicine of quotas, with its unpredictable side effects. I hope the Department will continue to make progress with less potent forms of treatment. There is no need now, however, to regret the drastic measures of the past that have brought the patient this far along the road to recovery.