**HONEYWELL INTERNATIONAL INC., and Honeywell Intellectual Properties Inc., Plaintiffs,**

v.

**The UNITED STATES, Defendant,**

**Lockheed Martin Corp., Defendant–Intervenor,**

and

**L–3 Communications Corp., Defendant–Intervenor.**

No. 02–1909C.

United States Court of Federal Claims.

June 23, 2006.

Lawrence J. Gotts, Mark Koehn, and Elizabeth Miller Roesel, Pillsbury Winthrop Shaw Pittman, LLP, McLean, Virginia, counsel for Plaintiffs.

Christopher L. Crumbley, John J. Fargo, and Trevor M. Jefferson, United States Department of Justice, Civil Division, Washington, D.C., counsel for Defendant.

Thomas J. Madden, Paul A. Debolt, and Justin E. Pierce, Venable, LLP, Washington, D.C., counsel for Defendant–Intervenor Lockheed Martin.

John H. Horne, John Harbin, Charles L. Warner, Mark B. Carter, Powell Goldstein LLP, Atlanta, Georgia, counsel for Defendant–Intervenor L–3 Communications Corp.

## MEMORANDUM OPINION AND ORDER GRANTING L–3 COMMUNICATIONS CORPORATION'S MOTION TO INTERVENE

BRADEN, Judge.

For the reasons discussed herein, the court has determined that L–3 Communications Corporation ("L–3 Communications") may intervene as a matter of right, pursuant to RCFC 24(a)(2). In the event that the United States Court of Appeals for the Federal Circuit may be asked to review this ruling, the court has determined, in the alternative, that L–3 Communications has established the requirements for permissive intervention, pursuant to RCFC 24(b)(2).

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

On April 28, 2006, the court held that Plaintiffs established, by a preponderance of the evidence, a *prima facie* case as to literal infringement of Claim 2 of the United States Patent No. 6,467,914 ("the '914 patent") and infringement under the doctrine of equivalents. *See Honeywell Int'l, Inc. v. United States,* 70 Fed.Cl. 424, 467 & 479 (2006). On October 10, 2006, Defendants will have an opportunity to present their defenses when the trial resumes. *Id.* at 426; *see also* 5/22/06 Scheduling Order.

On May 4, 2006, L–3 Communications filed a Motion to Intervene as a Matter of Right, pursuant to RCFC 24(a)(2) or, in the alternative, by permission of the court pursuant to RCFC 24(b)(2). L–3 Communications' Motion was filed together with a Memorandum in Support ("L–3's Mem.") and a Pleading of Defenses ("L–3's Defenses"). On May 18, 2006, Plaintiffs filed an Opposition ("Pls.Opp."). On May 31, 2006, L–3 Communications filed a Reply ("L–3's Reply"). On June 13, 2006, Plaintiffs, filed by leave of the court, a Surreply ("Pls.Surreply"). On June 15, 2006, L–3 Communications filed, by leave of the court, a Supplemental Brief ("L–3's Supp. Br.").

## DISCUSSION

### A. Standards For Intervention.

Rule 24 of the United States Court of Federal Claims authorizes the court to grant intervention to an entity that is not a party to the initial suit as a matter of right or by permission. *See* RCFC 24(a), (b).[1]

### 1. As A Matter Of Right—Pursuant To RCFC 24(a)(2).

The Rules of the United States Court of Federal Claims provide:

Upon *timely* application anyone shall be permitted to intervene in an action: ... when the applicant claims an *interest relating to the property or transaction which is the subject of the action* and the applicant is so situated that the *disposition of the action may* as a practical matter *impair or impede the applicant's ability to protect*

---

1. RCFC 24 is almost identical to Fed. R. Civ. P. 24. Prior cases interpreting Fed. R. Civ. P. 24, therefore, are instructive to the court's RCFC 24 analysis. *See Am. Maritime Transport, Inc.,* 870 F.2d at 1560 & n. 4 (relying on cases interpreting Fed. R. Civ. P. 24(a) to interpret RCFC 24(a)).

*that interest,* unless the applicant's interest is adequately represented by existing parties.

RCFC 24(a)(2) (emphasis added).

The United States Court of Appeals for the Federal Circuit has advised trial courts that "the requirements for intervention [as a matter of right] are to be construed in favor of intervention ... to protect these interests which are 'of such a *direct* and *immediate* character that the intervenor will either gain or lose by the *direct* legal operation and effect of the judgment.'" *Am. Maritime Transport, Inc. v. United States,* 870 F.2d 1559, 1561 (Fed.Cir.1989) (quoting *United States v. Am. Tel. & Tel. Co.,* 642 F.2d 1285, 1292 (D.C.Cir.1980) (quoting *Smith v. Gale,* 144 U.S. 509, 518, 12 S.Ct. 674, 36 L.Ed. 521 (1892))).

### 2. By Permission Of The Court—Pursuant To RCFC 24(b).

The Rules of the United States Court of Federal Claims also provide:

> Upon *timely* application anyone may be permitted to intervene in an action: ... when an applicant's claim or defense and the main action have a *question of law or fact in common.* In exercising its discretion the court shall consider whether the intervention will *unduly delay or prejudice the adjudication* of the rights of the original parties.

RCFC 24(b)(2).

Permissive intervention entails an element of discretion not relevant when intervention is required as a matter of right. *See John R. Sand & Gravel Co. v. United States,* 59 Fed. Cl. 645, 649 (2004), *aff'd* 143 Fed.Appx. 317 (Fed.Cir.2005) (citing 6 JAMES WM. MOORE, MOORE'S FED. PRAC. § 24.10[1], at 24–55 (3d ed.2002)).

### B. The Court's Disposition Of L–3 Communications Corp.'s Motion To Intervene.

#### 1. As A Matter Of Right—Pursuant To RCFC 24(A).

##### a. L–3 Communications Corp.'s Motion To Intervene Is Timely.

■ The United States Court of Appeals for the Federal Circuit has advised trial courts that three factors should be balanced in determining whether a motion for intervention is timely: "(1) the length of time during which the would-be intervenor[s] actually knew or reasonably should have known of [their] right[s] ...; (2) whether the prejudice to the rights of existing parties by allowing intervention outweighs the prejudice to the would-be intervenor[s] by denying intervention[;] (3) existence of unusual circumstances militating either for or against a determination that the application is timely." *Belton Indus., Inc. v. United States,* 6 F.3d 756, 762 (Fed.Cir.1993) (alterations in original) (quoting *Sumitomo Metal Indus., Ltd. v. Babcock & Wilcox Co.,* 69 C.C.P.A. 75, 669 F.2d 703, 707 (1982)).

■ In this case, Plaintiffs assert that L–3 Communications' Motion to Intervene is not timely, because L–3 Communications first learned of this litigation in 2003. *See* Pls. Opp. at 10–11. L–3 Communications responds that "there is no rule declaring a time period after which a motion to intervene must be denied on timeliness grounds." L–3's Reply at 3.

L–3 Communications appears to be on the same perilous footing as the proposed intervenors in *Belton Industries* that were aware of proceedings, in which they had an interest, but chose to wait for two years to intervene. *See Belton Indus.,* 6 F.3d at 756. In that case, our appellate court upheld a decision to deny intervention, pursuant to a rule substantially similar to RCFC 24(a) where a final judgment had been entered by the trial tribunal. *Id.* at 760. In this case, the court is not completely satisfied with L–3 Communications "tactical decision" not to intervene and participate in the infringement proceedings, particularly since one of their key employees, Mr. Kevin Walsh, a Staff Engineer with Optics Design, was an important factual witness in the court's infringement determination. *See Honeywell Int'l,* 70 Fed.Cl. at 435, 437, 445–46, 454, 464, 474–77 (citing JTX 79 with exhibits (5/19/05 deposition of Mr. Kevin Walsh); PTX 310 with exhibits (7/27/05 deposition of same)). It is possible

that L–3 Communications wanted to save the expense of attorney fees or was "content to sit on the sideline during this dispute and let other parties, particularly the United States Government, do the heavy lifting." *Belton Indus.*, 6 F.3d at 762. In any event, L–3 Communications has known for at least three years about this suit. The court, however, notes that the present case has a different procedural posture than that presented in *Belton Industries*, because Defendants have not presented their defenses and damages proceedings have not been held.

As to prejudice, Plaintiffs assert that:

[A]llowing L–3 to intervene will cause the all of the "drawbacks of piling on parties." [ ] L–3 seeks intervention to attempt to prove the very same defenses raised by the Government, Lockheed Martin, or both of them. The duplicative nature of the evidence will not shed any additional light on these defenses. The ultimate objectives of L–3 and the defendants are the same, and there is a presumption that the Government adequately represents L–3 interests. Allowing L–3 to intervene in this case would threaten expedient disposition of the action and raise the very real possibility that every other manufacture of accused display systems used by the Government or installed in a Lockheed Martin aircraft sold to the Government will seek intervention in this case.

\* \* \*

There would be no prejudice to L–3 if its motion is denied. As the Federal Circuit made clear in *Penda Corp. [v. United States]*, 44 F.3d [967,] 972–73 [(Fed.Cir. 1994)], a defendant-intervenor in a Section 1498 case "simply bears no risk from [an adverse] judgment" against the Government because "[u]nder generally accepted principles, . . . the Court of Federal Claims judgment cannot support the assertion of issue preclusion against [the defendant-intervenor] by either the Government or [the Section 1498 plaintiff]."

Pls. Opp. at 16, 27–28 (certain alterations in original; emphasis added; internal citations omitted).

L–3 Communication, however, distinguishes and challenges the relevance of *Penda*, as that decision did not concern intervention, but whether a third party defendant and an indemnitor of the Government that intervened in the case, could appeal a judgment entered against the Government, where the Government elected not to appeal. *See* L–3's Supp. Br. at 2–3. Moreover, L–3 Communications asserts that "[t]he only risk of prejudice is to L–3 [Communications] if it is not allowed to intervene." L–3's Reply at 6.

The court accepts Plaintiffs' argument that L–3 Communications likely will assert many of the same defenses as the Government and Lockheed Martin. Plaintiffs, however, have failed to evidence that they would be "severely prejudiced" by virtue of "[t]he duplicative nature of the evidence." Pls. Opp. at 27. To date, Plaintiffs have succeeded, in the face of two seasoned trial teams, in establishing a *prima facie* case of both literal infringement and infringement under the doctrine of equivalents as to Claim 2 of the '914 patent. The addition of another party with an interest in defending against the alleged infringement will not impose any "severe prejudice" on Plaintiffs. Moreover, there is no evidence in the record that supports Plaintiffs' speculation that "every other manufacture of accused display systems used by the Government or installed in a Lockheed Martin aircraft . . . will seek intervention in this case." Pls. Opp. at 2. On the other hand, the court is concerned that L–3 Communications may be prejudiced if denied the opportunity to intervene in this action.

In light of the fact that Defendants have not presented their defense, damages proceedings have not been held, the court has not entered a final judgment, and the other relevant factors weighing in favor of allowing intervention, the court has determined that L–3 Communications' Motion to Intervene is timely, albeit barely so. *See Am. Tel. & Tel.*, 642 F.2d at 1295 ("In deciding the timeliness of intervention, much must necessarily be left to the discretion of the trial court. We have stated that timeliness is to be judged in *consideration of all the circumstances*, especially weighing the factors of time elapsed since the inception of the suit, the purpose

for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." (emphasis added)). In reaching this determination, the court also was influenced by the fact that neither the Government nor Lockheed Martin objected to L–3 Communications' Motion to Intervene.

### b. L–3 Communications Corp. Has Interests Relating To The Property That Is The Subject Of This Action.

■ The property that is the subject of this action is Plaintiff's '914 patent. L–3 Communications manufactured and supplied the Color Multifunction Display Unit ("CMDU") and Radar–Display Unit devises to Lockheed Martin that Plaintiffs have alleged infringe the '914 patent. *See* L–3's Mem. at 2; *see also* L–3's Reply at 9 n. 1. L–3 Communications has advised the court that it is contractually obligated to indemnify Lockheed Martin for any infringement by the CMDU devise. *See* L–3's Mem. at 8–9; L–3's Reply at 9 n. 1. At the court's request, L–3 Communications provided the contracts to the court and parties to confirm the fact and scope of the indemnification. *See* 6/22/06 Decl. of Gayle Bryan, Exhibits A–D (filed with the court on 6/23/06). There is no question that if the court determines that the '914 patent has been infringed L–3 Communications' business could be impaired. *See* L–3's Reply at 8 ("Not only may damages from patent infringement flow down to L–3, but the allegedly infringing products comprise the core of L–3's display business. If this [c]ourt ultimately finds that L–3's products infringe the '914 patent, that finding may seriously impact L–3's display business.").

Plaintiffs contend that L–3 Communications' interest is "merely indirect or contingent[,]" because L–3 Communications "cannot demonstrate that it would gain or lose by the direct legal operation and effect of a judgment that the Government is liable under Section 1498 to pay reasonable compensation to Honeywell for use of the accused display systems." Pls. Opp. at 17; *see also* *id.* at 18 ("At best, whether L–3 will be held liable for even a portion of any damage assessment against the Government is the subject of indirect and contingent theories of liability—not the direct legal operation and effect of a judgment that is required to demonstrate intervention of right.").

In *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 87 S.Ct. 932, 17 L.Ed.2d 814 (1967), the United States Supreme Court held that a natural gas distributor that challenged an antitrust consent decree ordering divestiture of a producer's natural gas reserves had standing as an intervenor of right where the distributor's business could be adversely affected by the proposed divestiture. *Id.* at 133–36, 87 S.Ct. 932. Therefore, the term "interest" is not limited to property interests, but includes other interests threatened by a court's ruling. *Id.; see also United States v. City of Chicago*, 870 F.2d 1256, 1260 (7th Cir.1989) (Posner, J.) ("Rule 24(a)(2) ... does not require that the intervenor prove a property right, whether in the constitutional or any other sense." (citations omitted)); *New York Public Interest Research Group, Inc. v. Regents of Univ. of State of N.Y.*, 516 F.2d 350, 351–52 (2d Cir.1975) (pharmacists' financial stake in upholding a regulation banning advertising of prescription drug prices was a sufficient interest to support intervention of right); *Klamath Irrigation Dist. v. United States*, 64 Fed.Cl. 328, 331 (2005) ("[O]ther types of interests [beside property rights] have been found to justify intervention, among them economic and business interests, as well as those involving access to public resources or the enforcement of statutory rights conferred by Congress, provided these interests were legally protectable and not contingent." (citations omitted)).

The United States Court of Appeals for the Federal Circuit has held that intervention is "proper only to protect those [legally protectible] interests which are of such a *direct* and *immediate* character that the intervenor will either gain or lose by the *direct* legal operation and effect of the judgment." *Am. Mar. Transp.*, 870 F.2d at 1561 (internal quotations & citations omitted; emphasis in original) (citing *Am. Tel. & Tel.*, 642 F.2d at 1292).

L–3 Communications' interests will be directly and immediately affected by the court's final infringement determination of the '914 patent. To be sure, L–3 Communications' indemnification obligations will be contingent on Lockheed Martin exercising that right against L–3 Communications. In a recent decision of the United States Court of Federal Claims, however, the Honorable Francis M. Allegra, distinguishing contrary cases,[2] correctly observed that "[w]here, as here, the potential of additional litigation involving the same resources looms large, a putative intervenor should be allowed to prevent the development of adverse precedents that undoubtedly will be wielded against it in the future." *Klamath Irrigation Dist.*, 64 Fed.Cl. at 336.

L–3 Communications' indemnification obligation and position as a potential defendant in a separate proceeding where the issue of the potential infringement of the '914 patent will be an issue more than satisfies a direct and immediate interest relating to the '914 patent and weighs in favor of L–3 Communications' intervention.

### c. L–3 Communications Corp. Could Be Effected By The Final Disposition Of This Litigation.

■ The third requirement of RCFC 24(a) is that the movant must be in a position where the disposition of this litigation "may, as a practical matter, impair or impede [the] ability to protect that interest." RCFC 24(a).

Since a determination of infringement of the '914 patent would have a persuasive, if not collateral effect, on future litigation in which infringement of the '914 patent is at

issue, L–3 Communications has established that this requirement of RCFC 24(a) is also satisfied. *See Klamath Irrigation Dist.*, 64 Fed.Cl. at 335 (quoting *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C.Cir.1967) ("[A] decision by the [United States] District Court [for the District of Columbia], the first judicial treatment of this question, would receive great weight, whether the question arose again in this jurisdiction or in the federal court in Wisconsin")); *see also* 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FED. PRAC. & PROC. JURIS.2d § 4451 (2006) (discussing the special circumstances where a non-party may be precluded from litigating issues subject to a final judgment: "[I]t may prove possible to blend other circumstances with actual participation and control [of litigation] to achieve preclusion that would not be warranted by participation alone.").

### d. L–3 Communications Corp.'s Interests May Not Be Adequately Represented By Existing Parties.

■ Finally, the court must decide whether L–3 Communications' interests are being "adequately represented by existing parties." RCFC 24(a). The United States Supreme Court has held that the burden of demonstrating inadequacy of representation "is satisfied if the applicant shows that representation of his interest '*may* be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10, 92 S.Ct. 630, 30 L.Ed.2d 686 (1972) (emphasis added); *see also Am. Tel. & Tel.*, 642 F.2d at 1293 ("In such a situation commentators state that intervention turns on the circumstances of the particular case, but that

---

**2.** *See, e.g., John R. Sand*, 59 Fed.Cl. at 654–55 ("Intervenor-applicants have cited no persuasive or binding authority holding that a potential indemnification obligation is a sufficient interest to warrant intervention of right. Indeed, this absence of authority is not surprising. Here, the intervenor-applicants have consented to indemnify the United States for the costs of remediating pollution. Should those remediation costs eventually include payment for takings claims adjudicated against the United States, the court discerns no legally protectable interest of intervenor-applicants to avoid their indemnification obligation. In any case, this court, under its limit-

ed jurisdiction, is not charged with determining the legal obligations of intervenor-applicants to defendant in this matter. The court finds that intervenor-applicants do not have 'an interest relating to the property or transaction which is the subject matter of the action.' "); *Anderson Columbia Envtl., Inc. v. U.S.*, 42 Fed.Cl. 880, 882 (1999) ("While cancellation of the award and resolicitation resulting in an award to another bidder might 'impair' Tanner's contract award, [the winning bidder] would be able, as a disappointed bidder, to protect its interest in receiving an award by, if appropriate, filing its own protest.").

petitioner 'ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee.' ") (citations omitted).[3]

Plaintiffs argue that L–3 Communications's interests are aligned with the Government and Lockheed Martin:

Neither the Government nor Lockheed Martin are guaranteed to obtain indemnification from L–3. There is no evidence that either the Government or Lockheed Martin "know[ ] that they will be reimbursed [by L–3] for the damages and costs incurred in defending this infringement action." (L–3 Br. at 9.) As the user of accused display systems supplied by airframe manufacturers other than Lockheed Martin and display manufactures other than L–3, the Government has much more at stake than the relatively small number of the infringing L–3 displays that Lockheed Martin installed in C–130J aircraft sold to the Government. L–3 has presented no evidence that L–3's ultimate interest or objectives are different from that of the Government or Lockheed Martin.

Pls. Opp. at 23 (footnote omitted).

L–3 Communications responds that:

[T]he display systems sold by L–3 do not infringe claims 1, 2[,] or 3 of the '914 patent, literally or under the Doctrine of Equivalents; that the claims are invalid and non-functional; and that the claims are invalid and unenforceable because of, among other things, inequitable conduct before the U.S. Patent Office during the prosecution of the '914 patent and related patent applications. To the Government and Lockheed Martin, this is simply a matter of contractual indemnification by another party (ultimately, L–3). Also, it is L–3's understanding that *the Government will not assert some of these significant defenses as a matter of general policy.* If L–3's products are found to infringe the

'914 patent, both the Government and Lockheed Martin will continue with "business as usual," knowing that they will be reimbursed for the damages and costs incurred in defending this infringement action. This matter may ultimately fall on L–3.

L–3's Mem. at 9 (emphasis added).

On June 16, 2006, counsel for the Government advised the court that it may decide not to raise or assert all of the potential defenses. If so, L–3 Communications would be entirely dependent on Lockheed Martin, which for strategic reasons also may or may not assert all such defenses. *See Lockheed Martin Corp. v. L–3 Communications Corp.,* No. 1:05–CV–0902, 2005 WL 987625 (N.D.Ga. filed Apr. 4, 2005) (complaint alleging misappropriation or misuse of trade secrets and breach of license agreements and nondisclosure agreements).

In addition, L–3 Communications has disclosed proprietary information to the other parties in this litigation subject to a protective order. *See* L–3's Mem. at 2–5. L–3 Communications has alleged that Plaintiffs have mishandled this information. *See* L–3's Mem. at 3. Plaintiffs vigorously dispute this assertion. *See* Pls. Opp. at 8–9, 12–13. The court has not been presented with a motion to sanction any party for a violation of the Stipulated Protective Order, entered in this case on February 20, 2004, or the First Amended Protective Order, entered on November 16, 2004, reflecting changes negotiated by the parties. Nevertheless, the court is very concerned that protective orders, particularly in cases concerning intellectual property, are honored in fact and in spirit. In this case, the infringement trial was conducted in open court and some information subject to the protective orders was disclosed. In addition, some of that information is discussed in the Non–Public Version of *Honeywell Int'l.*[4]

**3.** Although the United States Court of Appeals for the Federal Circuit has not addressed which party bears the burden of proving or disproving whether a movant's interests are being adequately represented by existing parties, the United States Court of Appeals for the District of Columbia Circuit has held that "the burden is on those opposing intervention to show that representa-

tion for the absentee will be adequate." *Am. Tel. & Tel. Co.,* 642 F.2d at 1293.

**4.** Plaintiffs counsel of late has sent several letters to the court and made references in court filings to a so-called "impromptu" "ex parte" telephone conference between the court, counsel for L–3 Communications and Mr. Kevin Walsh on the

The court is reasonably confident that no one attended the infringement trial that was not subject to the protective orders or otherwise covered by the confidentiality requirement of all court employees. For whatever reason, however, counsel for L–3 Communications, was not present during the entire proceeding and did not register any objection about improper disclosure until months afterwards. Nevertheless, L–3 Communications' concern about the use of confidential and proprietary information weighs in favor granting intervention. *See Armour of Am. v. United States*, 70 Fed.Cl. 240, 243–45 (2006) (holding that a property interest in trade secrets or other confidential research and development information is sufficient to justify intervention as a matter of right).

For these reasons, the court has determined that L–3 Communications has established that the Government and Lockheed Martin do not necessarily have an interest in representing L–3 Communications' interests and that L–3 Communications should be allowed to intervene in this case as a matter of right. *See* RCFC 24(a)(2).

### 2. By Permission Of The Court—Pursuant To RCFC 24(b)(2).

L–3 Communications also has satisfied the requirements of RCFC 24(b)(2) for permissive intervention.

---

evening on April 28, 2006. *See* Exhibit A (May 1, 2006 Letter from Mr. Lawrence J. Gotts, Esq. to the Honorable Susan G. Braden). The Exhibits referenced herein have been provided to the parties' counsel and are on file with the Clerk of the United States Court of Federal Claims. The facts are as follows.

On April 17, 2006, the court released under seal a pre-publication draft of the court's Memorandum Opinion and Order Regarding Infringement to the parties' counsel to review and suggest appropriate redactions before the Memorandum Opinion was filed with the Clerk of the United States Court of Federal Claims, scheduled for release on April 29, 2006. *See* Exhibit B. On April 18, 2006, counsel for the parties advised the court that they did not have any suggested redactions, but recommended that the draft Memorandum Opinion be provided to counsel for L–3 Communications to review for suggested redactions, which was done on that day. On April 20 and 21, 2006, the court and the parties were provided with L–3 Communications' initial response. *See* Exhibits C & D. On April 21, 2006 counsel for Plaintiffs advised L–3 Communications, the Government, Lockheed Martin, and the court that it had no objection to the release of the draft Memorandum Opinion also to L–3 Communications' in-house counsel and management to review for suggested redactions. *See* Exhibit E. On that date, counsel for the Government and Lockheed Martin informed Plaintiffs and the court that they too had no objection, and the court authorized the release of the draft Memorandum Opinion to L–3 Communications' in-house counsel and management. *See* Exhibits E & F.

On April 27, 2006 at 2:59 pm, E.D.T., the court and the parties' counsel were provided with L–3 Communications proposed redactions, which were extensive. *See* Exhibit G. The court requested that a telephone conference be arranged with L–3 Communications to review and explain the court's view that many of the proposed redactions were not appropriate and would not be included in the Memorandum Opinion to be re-leased the next day. Since the proposed redaction of L–3 Communications' proprietary information was at issue, there was no reason for parties' counsel to participate. Nevertheless, as a courtesy, the court's Law Clerk made numerous telephone calls to the parties counsel between approximately 4:30 pm and 5:30 pm, without success. In fact, Mr. Gotts' office informed the court's Law Clerk that they had no idea of Mr. Gotts' whereabouts. A telephone conference was then convened from approximately 6:15 pm to 9:00 pm with counsel for L–3 Communications, Mr. Kevin Walsh, the court, and the court's Law Clerk, at which time each of the proposed redactions was reviewed and a consensus was reached regarding each. During this process, counsel for L–3 Communications explained the reason for proposing so many redactions was a concern that Plaintiffs' counsel had "mishandled" proprietary information subject to the Protective Order and mislead L–3 Communications' counsel about the fact that the infringement hearing would be open to the public. The court advised L–3 Communications' counsel that a telephone conference would be convened the next day to discuss these issues at a time when all counsel could participate. That conference took place in the afternoon on April 28, 2006.

On May 1, 2006, Mr. Gotts sent a letter to the court protesting the April 27, 2006 telephone conference and representing that he was in the office on April 27, 2006 until 6:15 pm, accessible via e-mail and telephone, and had no record of the court's Law Clerk having attempted to reach him. *See* Exhibit A. At the court's request, the Information Service Manager for the United States Court of Federal Claims reviewed the automated telephone log for the court's Law Clerk and prepared an affidavit confirming that telephone calls were made to Mr. Gotts on April 27, 2006 at 5:05 pm, 5:10 pm, and 5:22 pm. *See* Exhibit H. Accordingly, Mr. Gotts is advised that continued mischaracterization of the events of April 27–28, 2006 in any further communications with the court or in any pleadings will be considered cause for their rejection.

### a. L–3 Communications Corp.'s Motion To Intervene Is Timely.

RCFC 24(b)(2) requires that a motion for intervention be timely. The court has determined that L–3 Communications' Motion to Intervene was timely, particularly in light of other relevant factors, *i.e.*, prejudice, that weigh in favor of allowing intervention. *See supra* Discussion, part B(1)(a); *see also Belton Indus.*, 6 F.3d at 762 (discussing the three factors that should be balanced in determining whether a motion for intervention is timely).

### b. L–3 Communications Corp.'s Has Defenses That Raise Questions Of Law Or Fact In Common With This Action.

■ RCFC 24(b)(2) also requires the proposed intervenor have a claim or defense that raises a question of law or fact in common with the present action. L–3 Communications has asserted several defenses to Plaintiffs' claim that the CMDU infringes the '914 patent. *Compare* L–3's Defenses at 1–2 (asserting five defenses: no literal infringement because the L–3 products do not have one or more elements of the claims of the '914 patent; no infringement via the doctrine of equivalents because the L–3 products do not have one or more elements of the claims; no infringement via the doctrine of equivalents because, during prosecution, Plaintiffs filed one or more amendments that surrendered the equivalents; one or all of the claims are invalid; and the '914 patent is not enforceable in view of its prosecution history), *with* 5/31/05 Gov't Amend. Answer ¶ 41 (asserting a number of defenses, including all of the claims of the '914 patent are invalid), *and* 5/31/05 Lockheed–Martin Amend. Answer ¶¶ 39–42 (asserting a number of defenses, including all of the claims of the '914 patent are either invalid or unenforceable). Therefore, the common question of law or fact requirement is met.

### c. L–3 Communications Corp.'s Intervention Will Not Delay Or Prejudice The Rights Of The Parties.

The final consideration under RCFC 24(b)(2) is whether the intervention would unduly delay or prejudice the adjudication of the rights of the original parties. As discussed earlier, the court does not accept Plaintiffs' assertion that the addition of a third defendant to this action will significantly prejudice Plaintiffs. Moreover, L–3 Communications' intervention will not unduly delay this court reaching a final judgment. On May 22, 2006, the court entered a Scheduling Order for the resolution of the remainder of this action and L–3 Communications has indicated that it will comply with that schedule if intervention is allowed. *See* L–3 Mem. at 10 ("L–3's participation will not delay these proceedings."). Therefore, there is no support in the record for Plaintiffs' claim of delay and prejudice. The court intends to hold L–3 Communications, as well as the parties, to the May 22, 2006 Scheduling Order.

### CONCLUSION

Pursuant to RCFC 24(a)(2), L–3 Communications' May 4, 2006 Motion to Intervene as a Matter of Right is hereby granted.

**IT IS SO ORDERED.**