Richard M. RAGSDALE, M.D., individually and on behalf of all other physicians similarly situated; Margaret Moe, individually and on behalf of female patients at her medical facility; Northern Illinois Women's Center, an Illinois corporation; Sarah Roe, and Jane Doe, individually and on behalf of all other women similarly situated, Plaintiffs,

v.

Bernard J. TURNOCK, Director of the Illinois Department of Public Health; Neil F. Hartigan, Attorney General, State of Illinois; Cecil A. Partee, on behalf of all State's Attorneys in the State of Illinois; Robert C. Thompson, Acting Director, Illinois Department of Professional Regulation, Defendants.

No. 85 C 6011.

United States District Court, N.D. Illinois, E.D.

March 22, 1990.

Colleen K. Connell, Harvey Grossman, Roger Baldwin Foundation of ACLU, Ltd., Alan S. Gilbert, Lorie A. Chaiten, Sonnenschein, Nath & Rosenthal, Chicago, Ill., for plaintiffs.

Harold E. McKee, III, Asst. State's Atty., Kathleen Kreisel Flahavin, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Before the court is the parties' joint motion under Rule 23(e) of the Federal Rules of Civil Procedure for approval of a proposed settlement and consent decree. For the reasons stated below, the court grants the motion and enters the consent decree.

## BACKGROUND

Plaintiffs brought this action on June 28, 1985, seeking declaratory and injunctive relief from the enforcement of portions of three Illinois statutes, the Medical Practice Act, Ill.Rev.Stat. ch. 111, §§ 4433(1)(a)–(e) (later recodified as §§ 4400–22(1)(a)–(e)), the Ambulatory Surgical Treatment Center Act, Ill.Rev.Stat. ch. 111½, §§ 157–8.1 *et seq.*, and regulations promulgated thereunder, and the Health Facilities Planning Act, Ill.Rev.Stat. ch. 111½, §§ 1152 *et seq.*

Plaintiffs challenged the constitutionality of these statutes and regulations, contending that they form a scheme which in effect requires all abortions to be performed in a hospital or its functional equivalent. Plaintiffs charged that this scheme violated the equal protection rights of Illinois physicians who perform or desire to perform abortions, and the privacy rights of Illinois women who desire or may desire to obtain an abortion. This court agreed, and on November 27, 1985, granted plaintiffs' motion for preliminary injunction.[1] On March 10, 1988, the United States Court of Appeals for the Seventh Circuit upheld the injunction, except for one portion which it vacated as moot.[2]

Defendants filed a Notice of Appeal, seeking review by the United States Supreme Court. On July 3, 1989, the Supreme Court entered an order accepting the case for oral argument but postponing the question of jurisdiction until the hearing on the merits. Before the date scheduled for oral argument, the parties negotiated the proposed consent decree now before this court. The decree seeks to resolve all claims for declaratory and injunctive relief brought by plaintiffs and reserves their claim for attorney's fees, costs and expenses. On December 1, 1989, the Supreme Court granted the parties' joint motion to defer proceedings there pending

---

1. The court's opinion is published at 625 F.Supp. 1212 (N.D.Ill.1985).

2. The decision of the Court of Appeals is published at 841 F.2d 1358 (7th Cir.1988).

this court's decision to approve or disapprove the proposed decree.

Following the Supreme Court's order, the parties gave notice of the proposed settlement to the plaintiff and defendant classes, with this court's approval.[3] The court allowed any class members objecting to the proposed settlement to file submissions by February 9, 1990, with responses due the following week. During this period, the court received 326 telephone calls, two telegrams, and 1,266 letters. The court read every single letter in its entirety.

On February 23, 1990, the court conducted a hearing to assess the fairness of the proposed settlement. The parties explained their reasons for negotiating the settlement; afterward, the court heard objections from amici who had filed briefs with the court.[4] Finally, the court permitted individuals attending the hearing—who filled the largest courtroom in the courthouse—to express their views if they wished. After reviewing the prior findings of fact and conclusions of law issued by this court, reviewing the opinion of the Seventh Circuit Court of Appeals and the applicable decisions of the United States Supreme Court, examining the briefs filed by the parties and objectors, and hearing and considering all of the written and oral presentations made in connection with the fairness hearing [5], the court makes the following findings of fact and conclusions of law.

## DISCUSSION

In deciding whether to approve a proposed consent decree, "a district court must determine whether [it] is lawful, fair, reasonable, and adequate." *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir.1985). The court does not draw on a clean slate, however. Deference must be given to the settlement, since it embodies a negotiated compromise between the parties. A district court should therefore "be chary of disapproving a consent decree." *Id.*, p. 890. Indeed, the court "may not deny approval of a consent decree unless it is unfair, unreasonable, or inadequate." *Id.*, p. 889.

3. The parties gave notice by mail to all facilities which, at the time the complaint was filed, were licensed ASTCs (Ambulatory Surgical Treatment Centers) and offered abortions; by publication in the Chicago Tribune and the Chicago Sun-Times to all presently licensed ASTCs which offer abortions; and by mail to all members of the defendant class of state's attorneys. All methods of notice were completed by January 29, 1990.

As required, the notice also informed class members of the fairness hearing to be conducted on February 23, 1990. For this and other aspects of the settlement process, the court was guided by the procedures set forth in the *Manual for Complex Litigation, Second*, §§ 30.4–30.-47 (1985).

4. Among the amici were certain members of the Illinois General Assembly and an individual attorney from Chicago. There were other objectors who filed materials with the court, but did not style themselves "amici." The court heard their comments as well. The court also heard objections from some of the state's attorneys of the defendant class, who had submitted briefs to the court.

Two objectors, Kenneth M. Reed and Mark I. Aughenbaugh, sought leave to intervene on behalf of "a class consisting of all Illinois unborn babies." Any interest in protecting the fetus is for the state to assert, however. The objectors brought no evidence showing "gross negligence or bad faith" committed by the state in representing the interests implicated by this litigation. Without such a showing, the state's representation must be presumed adequate. *United States v. South Bend Community School Corporation*, 692 F.2d 623 (7th Cir.1982). Accordingly, the court denied the objectors' petition but granted leave to file written objections and appear as amici, which they did. Their Petition to Reconsider Petition to Intervene and to Maintain Class Action of Baby Reed and Baby Aughenbaugh, filed March 15, 1990, is likewise denied. *See United States v. City of Chicago*, 897 F.2d 243 (7th Cir.1990) ("intervention to take an appeal is permissible only if the original parties' decision to discontinue the battle reflects 'gross negligence or bad faith'").

5. One notable submission to the court is the Draft Order Approving and Entering Consent Decree, filed jointly by plaintiffs and defendants on March 16, 1990. It reflects the parties' stipulations as to findings of fact and conclusions of law in this case. As such it can more properly be characterized as a Stipulation, which is how the court will hereinafter refer to it. While declining to incorporate the entire Stipulation into this opinion, the court enters it into the record as evidence to be weighed in evaluating the proposed consent decree.

The consent decree proposed here enjoins the enforcement of certain statutory provisions challenged by plaintiffs. Foremost among them are § 157-8.3(A) of the ASTCA, defining any facility in which a medical or surgical procedure is utilized to terminate a pregnancy as an "Ambulatory Surgical Treatment Center"; and a host of regulations requiring ASTCs to comport with physical plant specifications and other restrictions which "in effect ... require ASTCs to be the functional equivalent of small hospitals." [6] It was this statutory scheme that plaintiffs regarded as infringing on the constitutional right of women to have an abortion, a view shared by this court and the Court of Appeals.

The consent decree introduces a new scheme which identifies two types of surgical facilities: those that perform abortions beyond 18 weeks gestational age, or with general, epidural, or spinal anesthesia, or with incisions exposing the patient to a risk of infection; and those that perform abortions within 18 weeks gestational age, under local anesthesia. The former are made subject to a panoply of licensing provisions under the ASTCA and Health Facilities Planning Act. The latter, while still obliged to obtain a license, are required to comply with a new set of regulations tailored to those facilities.[7]

This scheme is neither unfair, unreasonable, or inadequate. As counsel for both parties noted during the fairness hearing, the settlement addresses each side's principal concern. To plaintiffs' satisfaction, the decree preserves their constitutional right to have or provide abortions; to defendants' satisfaction, it permits the Department of Public Health to regulate outpatient clinics devoted to abortions and abortion-related procedures. The decree reflects "the essence of settlement," which is "compromise ... Each side gains the benefit of immediate resolution of the litigation and some measure of vindication for its position while foregoing the opportunity to achieve an unmitigated victory." *Hiram Walker*, 768 F.2d at 889.

Various objectors insist that the proposed consent decree compromises too much. Family Planning Associates Medical Group (FPA), a major provider of abortion services in Chicago and elsewhere, objects to the provision that subjects an abortion-only surgical facility to full ASTC regulatory requirements if it uses general anesthesia. "That provision," says FPA, "permits the imposition of burdensome and medically unnecessary regulations that would impermissibly infringe on the rights of the physician class to provide abortion services ..." FPA brief, p. 2.

FPA's argument is unavailing. General anesthesia is more hazardous than local anesthesia, a fact to which Doctors Ragsdale and Hern, plaintiff and plaintiffs' expert, respectively, testified. State Defendants' Response, p. 8. Indeed, the Abortion Standards and Guidelines of Planned Parenthood Federation of America, Inc. provide that "[g]eneral anesthesia may not be used in out-of-hospital settings." *Id.* In view of this distinction between local and general anesthesia, the court cannot conclude that the provision challenged by FPA renders the settlement unfair or unreasonable.

Equally unavailing are suggestions by a number of objectors that *Webster v. Reproductive Health Services, Inc.*, — U.S. ——, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989), requires disapproval of the settlement. *Webster* concerned the use of public facilities and employees to perform abortions, the use of public funding for abortion counseling, and viability testing at 20 weeks gestation. These issues are not involved here. As the state defendants properly observe, "[t]he *Webster* decision did

---

**6.** *Ragsdale v. Turnock*, 625 F.Supp. at 1216. Together with the appellate court's opinion, that decision contains exhaustive discussions of the statutes in question and plaintiffs' challenge to them. The court's task here is not to rehash that material, but rather to ask whether the proposed consent decree fairly addresses the concerns expressed on both sides of the dispute. Since the findings of fact set forth in the *Rags-* *dale* decisions are relevant to that inquiry, the court incorporates them in today's opinion.

**7.** The decree does not require a separate license for physicians whose offices are not primarily devoted to providing surgical services, and it does not affect the provision of abortions in hospitals.

not provide any definitive pronouncements for purposes of this litigation and did not overrule the previous relevant Supreme Court decisions." State Defendants' Response, p. 9.

Similarly, mere speculation that the Supreme Court might uphold the provisions challenged here in light of *Webster* will not invalidate the consent decree.[8] In deciding whether to approve a settlement, "[t]he district court should refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights." *Hiram Walker*, 768 F.2d at 889. Settlement proceedings are not an appropriate occasion for resolving the merits of undecided legal issues. The court declines the invitation of some objectors to do so.

Other objectors insist that the consent decree endangers the health and safety of women seeking abortions. There is no evidence to support this contention. To the contrary, in their briefs and at the fairness hearing, counsel for both parties made clear what their intentions were during settlement negotiations: to assure safe and sanitary conditions for abortion procedures while permitting women the opportunity to exercise their constitutional rights. Toward that end, the parties consulted with obstetricians, gynecologists, and other medical and public health experts in drafting the terms of the settlement.[9]

Far from leaving women unprotected, the settlement creates a network of statutes and rules regulating the provision of abortion services. Facilities that provide abortions beyond 18 weeks gestational age or use general anesthesia must comply with the Ambulatory Surgical Treatment Center Licensing Requirements. Facilities that offer abortion services within 18 weeks gestational age, using local anesthesia, must abide by the requirements set forth under subpart G of the ASTCA, "Limited Procedure Specialty Centers." Like any other provider of medical services, abortion providers must comply with standards of conduct generally applicable to the medical profession.[10] Finally, the Clinical Laboratory Act—and any other present or future legislation not contrary to the consent decree—may be applied to providers of abortion services.[11]

Taken together, these statutes and regulations provide the state with ample authority to safeguard the health and safety of women seeking abortions. That is certainly the view of the Department of Public Health, which is charged with regulating health care in the State of Illinois: "it is the judgment of the medical doctors with the Department of Public Health that the remaining regulations provide a sufficient mechanism by which the Department can regulate and inspect these facilities in order to minimize the risk of harm to patients undergoing surgery at these facilities. This judgment, as well as the goal of regaining regulatory authority is consistent with the stated purpose of the ASTC Act to 'promote safe and adequate treatment.'" State Defendants' Response, p. 7 (citation omitted).

There remain two objections to the proposed consent decree worth discussing. A handful of state's attorneys contend that the defendant class to which they belong

---

**8.** To say the Supreme Court might uphold the challenged provisions is doubly speculative. Not only is the substantive law unsettled, but the Court reserved the issue of jurisdiction and may not have reached the merits in this case.

**9.** Among those consulted were the American College of Obstetricians and Gynecologists, Planned Parenthood Federation of America, the National Abortion Federation, and other professional societies. The parties also reviewed *Williams Obstetrics* and other respected medical texts and publications. Stipulation, p. 18.

**10.** Some objectors complain that the decree puts physicians wholly outside the regulatory powers

of the state, but that objection misses the mark. No less than the clinics regulated by the ASTCA, physicians may not violate accepted standards of medical practice when performing abortions.

Moreover, the decree leaves the Legislature free to amend the Medical Practice Act or to enact legislation specifically regulating physicians' offices.

**11.** The consent decree does not, as some objectors contend, purport to bind future actions of the General Assembly. The decree specifically applies only to the challenged statutes as presently enacted. If those statutes are amended or new statutes passed, the decree does not affect their enforcement.

was not adequately represented during settlement negotiations. In support of this charge, the objectors refer obliquely to "information" culled from their review of the settlement proceedings which they regard as evidence of inadequate representation. They consider the behavior of their class representative so suspect that, even if it does not require rejection of the proposed settlement, it warrants further discovery.

Their charge is without merit. On November 8, 1989, this court ordered the State's Attorney of Cook County, or his representative, to participate in settlement negotiations. Assistant State's Attorney Harold E. McKee, III, was assigned to the case. At the fairness hearing, plaintiffs and defendants alike attested to the vigor and frequency of Mr. McKee's participation in the negotiations. He "attend[ed] and participate[d] in all settlement negotiations ... participated in drafting the proposed settlement and consent decree, represented the class interest in maintaining the ability to prosecute future violations under the settled acts, and also participated in the briefings held for the benefit of the news media ..." State's Attorney Partee's Response, p. 4. The court finds his representation adequate and denies the Motion for Leave to Take Discovery brought by Dennis Schumacher, Greg McClintock, Samuel Naylor, and Stephen L. Reed, state's attorneys for Ogle, Warren, Hancock, and Henderson counties, respectively.

Finally, some objectors challenge the consent decree because it would expose defendants to a claim for attorney's fees. But the consent decree expressly reserves the issue of attorney's fees for resolution at a later date:

> The plaintiffs' entitlement to, and the amount of, any counsel fees and reimbursement of disbursements and expenses to be paid by the defendants shall be determined by the District Court upon proper application by the plaintiffs after the entry of the Consent Decree and final judgment.

Settlement Agreement, p. 5. Any objections regarding fees made at this time are premature.

The parties' Stipulation discusses this and nearly every other aspect of these settlement proceedings. Although far too detailed for full discussion here, some elements of the Stipulation deserve mention. Beginning with page 7, for instance, the Stipulation comprehensively reviews the procedural history behind the consent decree. The court incorporates that review in this opinion. Further, the Stipulation identifies several factors which may be used to decide whether a settlement is fair, including the strength of plaintiffs' case versus the settlement offer; the complexity and expense of further litigation; the reaction of class members to the settlement; the opinion of competent counsel; and the stage of proceedings and amount of discovery completed. Stipulation, p. 27.

Without launching into full analysis of these factors here, the court notes that it considered them all in reaching its holding today. The consent decree offers plaintiffs, by their own admission, "permanent injunctive relief similar ... to that which they sought in this litigation ..." (Stipulation, p. 28); further litigation could prove lengthy and expensive; few class members objected to the settlement; counsel were clearly well-informed and represented their clients zealously; and the settlement agreement arose late in the proceedings, after thorough discovery had been completed. These and other factors considered by the court are more fully explained by the parties in the Stipulation.

For the foregoing reasons, the court finds the proposed consent decree lawful, fair, reasonable, and adequate. Accordingly, the court grants the parties' joint motion for approval of the settlement, and enters the consent decree herewith.

## CONSENT DECREE

### I. HISTORY OF THE LITIGATION

This class action litigation was commenced as a civil rights case on June 28, 1985, by named Plaintiffs Richard M. Ragsdale, M.D., Margaret Moe, R.N., the Northern Illinois Women's Center, Sarah Roe and Jane Doe, under 42 U.S.C. sections 1983 and 1988, and 28 U.S.C. sections 2201 *et seq.* Plaintiffs claimed that the challenged Illinois statutes and regulations,

which included (1) the Medical Practice Act, ("MPA") Ill.Rev.Stat. ch. 111 section 4433(1)(a)–(e) (since recodified at Ill.Rev. Stat. ch. 111 section 4400–22(1)), (2) the Ambulatory Surgical Treatment Center Act ("ASTC Act"), Ill.Rev.Stat. ch. 111½ sections 157–8.1 to 157–8.16 and regulations promulgated thereunder, and (3) the Health Facilities Planning Act ("HFP Act"), Ill. Rev.Stat. ch. 111½ sections 1151 to 1168, impermissibly restricted the performance of first and second trimester abortions and thus allegedly violated rights secured by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution.

## A. Parties

### 1. *Plaintiffs*

Plaintiff Richard M. Ragsdale, M.D., is a physician, licensed to practice in Illinois, who is the Director of the Northern Illinois Women's Center. At the time the complaint was filed and at the present, Dr. Ragsdale performs abortions for his women patients who seek such medical care. Plaintiff Margaret Moe is a registered nurse and the sole owner and executive director of a medical facility in Cook County, Illinois. Ms. Moe employs licensed physicians and she sought to offer abortion services at her facility. Plaintiffs Sarah Roe and Jane Doe are patients of Dr. Ragsdale who had sought and received an abortion from Dr. Ragsdale and who may need or desire another abortion in the future.

The named plaintiffs brought this lawsuit on their own behalf, on behalf of a class of physicians who perform or desire to perform abortions in the State of Illinois, and on behalf of a class of Illinois women who desire abortion services. In orders issued on November 27, 1985 and on December 11, 1985, this Court certified the following plaintiff classes pursuant to Rule 23(b) of the Federal Rules of Civil Procedure:

(a) A plaintiff class consisting of all physicians and surgeons who perform or desire to perform abortions in the State of Illinois; [and]

(b) A plaintiff class consisting of all Illinois women of child-bearing age who desire or may desire an abortion sometime in the future[.]

### 2. *Defendants*

Defendant Bernard J. Turnock, M.D., is the Director of the Department of Public Health of the State of Illinois and was sued in his official capacity. He is responsible for the enforcement of the ASTC Act and for the promulgation and enforcement of regulations under that Act, and has certain administrative responsibilities under the HFP Act.

Defendant Neil F. Hartigan, Attorney General of the State of Illinois, was sued in his official capacity, in which he is charged with the defense of challenges to the MPA, the ASTC Act and the HFP Act, and their respective regulations, throughout the State of Illinois. In addition, as chief legal officer of the state, the Attorney General represents the directors of state agencies in their enforcement activities, and upon referral by these agencies, has certain enforcement responsibilities on behalf of these agencies.

Defendant Gary L. Clayton was sued in his official capacity as the Director of the Illinois Department of Registration and Education. As such Mr. Clayton, and his successor in office at the successor agency, Robert C. Thompson, the Acting Director of the Department of Professional Regulation, is empowered to implement, administer, and enforce the MPA.

Defendant Richard M. Daley was sued in his official capacity as State's Attorney of Cook County, and as the representative of the defendant class of all state's attorneys of the 102 counties of the State of Illinois. Under the ASTC Act, the Director of the Department of Public Health may, through the State's Attorney of the county in which the violation occurs, seek injunctions to restrain violations of the ASTC Act or its regulations, or enjoin future operation of any ambulatory surgical treatment center ("ASTC") violating the ASTC Act or its regulations. Under the HFP Act, state's attorneys may prosecute persons in violation of the Act for committing a business offense.

In orders issued on November 27, 1985 and on December 11, 1985, this Court certified the following defendant class pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure:

"A defendant class consisting of all State's Attorneys in the State of Illinois."

Richard M. Daley, as the State's Attorney of Cook County, was named as representative of this defendant class. Richard M. Daley has been succeeded in office by Cecil A. Partee, who pursuant to Rule 25(d), F.R.Civ.P., has been automatically substituted as the named defendant state's attorney and as representative of the defendant class of state's attorneys.

### B. Jurisdiction

This Court concludes that it has jurisdiction of this action under 28 U.S.C. section 1343. Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. section 1391.

### C. The Claims

In their Complaint, plaintiffs alleged that the challenged statutes and regulations impermissibly restricted the ability of physicians to perform and the ability of women to secure first and second trimester abortions. Plaintiffs claimed that the laws singled out abortions for a discriminatory level of regulation and, further, required that all abortions performed in Illinois be performed in a hospital, or its functional equivalent—an ASTC. Plaintiffs thus alleged that the laws violated plaintiffs' right of privacy as guaranteed by the First, Fourth, Fifth, Ninth, and Fourteenth Amendments to the Constitution and the penumbra of the Bill of Rights. Plaintiffs also alleged that the challenged provisions deprived Dr. Ragsdale and other physicians of their asserted right to practice medicine free from vague, arbitrary, irrational and burdensome regulations, in violation of the equal protection clause of the Fourteenth Amendment to the United States Constitution, and that the provisions similarly prevented Margaret Moe from operating her facility free from vague, arbitrary, irrational and burdensome regulations, in violation of the equal protection clause of the Four-teenth Amendment. Plaintiffs sought declaratory and injunctive relief from the enforcement of the challenged provisions.

Defendants filed an Answer which denied each and every allegation of the Complaint, except as otherwise responded to. Defendants specifically denied each and every allegation that the laws, as written or as enforced, violated any of plaintiffs' rights guaranteed by the First, Fourth, Fifth, Ninth and Fourteenth Amendments to the United States Constitution. Defendants argued that the challenged statutes and regulations reflected accepted medical, health, safety, and construction standards for outpatient surgical facilities. In addition, defendants contended that the challenged provisions appropriately furthered the State's interests in protecting the health, safety and welfare of women who choose to have abortions in such facilities.

### D. The Preliminary Injunction

Following an evidentiary hearing and a review of the pleadings and other written evidence submitted by the parties, this Court granted plaintiffs' Motion for a Preliminary Injunction in orders issued on November 27, 1985 and on December 11, 1985. The Court enjoined the defendant class members and the individual defendants Bernard J. Turnock, Neil F. Hartigan, and Gary Clayton (hereafter collectively referred to as "defendants"), in their official capacities, and defendants' successors, officers, agents, servants, employees and attorneys and those persons in active concert or participation with them, from enforcing section 4433(1)(a)–(e) (now section 22(1)(a)–(e)) of the MPA, the ASTC Act and any rules and regulations promulgated thereunder, or the HFP Act, against any person or facility to the extent such person or facility offers or performs, or desires to offer or perform first or early second trimester abortions or other abortion-related gynecological procedures, such as a dilation and curettage.

On March 10, 1988, the United States Court of Appeals for the Seventh Circuit upheld the Preliminary Injunction, except insofar as the challenge to one provision

was determined to be moot. The Court of Appeals subsequently denied defendants' petition for rehearing and suggestion for rehearing en banc on August 12, 1988.

Thereafter, defendants Turnock, Hartigan, and Stephen Selcke, then-director of the Department of Professional Regulation and successor to defendant Clayton, filed a Notice of Appeal, seeking review by the Supreme Court of the United States.

## II. RESOLUTION OF DISPUTED ISSUES

This Consent Decree is the result of negotiation and settlement. Defendants deny the allegations in the Complaint and specifically deny that the challenged provisions and their enforcement of them violates the constitutional or other legal rights of the plaintiff classes. Nothing herein shall be considered an admission of fault of any kind by the defendants, nor shall anything herein be considered a reflection of any weakness of proof by the plaintiffs.

The parties are desirous of avoiding further protracted and costly litigation and therefore have agreed that this controversy should be resolved by settlement and without further evidentiary hearings. In addition, the defendants desire to expeditiously regain the State's authority to license and regulate outpatient surgical facilities in which abortions are performed and to implement and enforce regulations as to such facilities. Accordingly, as indicated by the signatures below, the parties have agreed to the entry of this Consent Decree.

This Consent Decree and judgment shall constitute a final resolution of all of the claims for declaratory and injunctive relief asserted in the complaint, with the reservation of plaintiffs' claims for attorney's fees, costs, and expenses, and shall be binding upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them, including: the defendants, their agents and employees, and their successors in office, the defendant class of state's attorneys, and upon the named plaintiffs and all persons in the classes they represent. The plaintiffs' entitlement to, and the amount of, any counsel fees and reimbursement of

costs and expenses shall be determined by the Court upon proper application by the plaintiffs after entry of this Decree. Defendants retain their right to object to such application submitted by plaintiffs. The parties also may resolve the plaintiffs' claim to fees, costs and expenses by agreement.

Plaintiffs and defendants agree to the dissolution of the Preliminary Injunction and to the entry of this Consent Decree as a Permanent Injunction.

## III. FINDING OF FAIRNESS AND ADEQUACY

The Court, having held a hearing pursuant to court-ordered notice to the plaintiff and defendant classes in accordance with Rule 23(e) of the Federal Rules of Civil Procedure, hereby finds that the terms of this Consent Decree provide for a fair, adequate, and reasonable settlement of the claims for declaratory and injunctive relief asserted in the complaint, with the exception of plaintiffs' claims for attorney's fees, costs and expenses. The Court thereby dissolves the Preliminary Injunction and enters this Consent Decree as a Permanent Injunction, the injunctive terms of which are set forth in section IV.

## IV. JUDGMENT AND PERMANENT INJUNCTION

NOW, THEREFORE, upon the consent of the parties and approval of this Court, IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

[SEE ATTACHMENT A FOR THE INJUNCTIVE PORTION OF THIS CONSENT DECREE]

## V. COMPLIANCE

Class members shall be given at least 6 months from the date of approval of this Consent Decree to bring their facility into compliance with the terms of the Consent Decree or any new regulations promulgated by the Department of Health, pursuant to this decree, governing the provision of abortion services.

ORDERED THIS 22 day of March, 1990.

/s/ John A. Nordberg
UNITED STATES
DISTRICT COURT JUDGE

Approved:

One of the Attorneys for
the Plaintiff Class:

/s/ Colleen K. Connell

Bernard J. Turnock, M.D.,
Director, Illinois
Department of Public Health

---

Defendant Neil F. Hartigan,
Attorney General of Illinois

---

One of the Attorneys for
Cecil A. Partee State's Attorney
of Cook County and the defendant
class of State's Attorneys

---

Kevin K. Wright,
Director, Illinois
Department of Professional
Regulation

---

## ATTACHMENT A

### INJUNCTION PORTION OF CONSENT DECREE

1. Defendants, in their official capacities, their successors in office, their officers, agents, servants, contractors, employees and attorneys, and those people in active concert and participation with them, are hereby enjoined from initiating any prosecution, including but not limited to criminal, civil and administrative proceedings, or imposing any sanction for violation of, or enforcing in any way, any of the statutes set forth in subparagraphs (A) and (B) below against any person or facility offering or performing abortions:

A. Section 157–8.3(A) (section 3) of the Ambulatory Surgical Treatment Center Act ("ASTC Act"), Ill.Rev.Stat. ch. 111–½, par. 157–8.3(A), to the extent that "Ambulatory Surgical Treatment Center" is defined as any facility in which a medical or surgical procedure is utilized to terminate a pregnancy.

B. Section 22(1)(a)–(e) of the Medical Practice Act. Ill.Rev.Stat. ch. 111.

2. Defendants, in their official capacities, their successors in office, their officers, agents, servants, contractors, employees and attorneys, and those people in active concert and participation with them, are hereby enjoined from initiating any prosecution, including but not limited to criminal, civil and administrative proceedings, or imposing any sanction for violation of, or enforcing in any way, against any licensed Ambulatory Surgical Treatment Center ("ASTC"), the following provisions of the Ambulatory Surgical Treatment Center Licensing Requirements, 77 Ill.Admin. Code, § 205, subchap. b: (1) 205.710, (2) 205.720, (3) 205.730(a)(3) and (b), (4) 205.-740, and (5) 205.760, and, if such facility provides only abortions and related gynecological procedures, (6) 205.120(b)(5)–(7), and (7) 205.125(b)(5)–(7), to the extent that, provided that all information required under said sections is maintained at the ASTC, the application required by said sections need only include the name, address or telephone number of the owner(s), administrator(s) and medical director(s) of the ASTC.

3. Defendants, in their official capacities, their successors in office, their officers, agents, servants, contractors, employees and attorneys, and those people in active concert and participation with them, are hereby enjoined from initiating any prosecution, including but not limited to criminal, civil and administrative proceedings, or imposing any sanction for violation of, or enforcing in any way, any of the statutes or regulations set forth in subparagraphs (A) and (B) below against any person or facility offering or performing abortions within 18 weeks assessed gestational age, with only local, and not general, epidural, or spinal anesthesia, without incisions or other techniques which expose a person to risk of infection from airborne bacteria, and gynecological procedures related to such abortions, in an ASTC whose surgical procedures are limited to the per-

formance of such abortions and gynecological procedures related to such abortions:

A. Sections 1152–1168 of the Health Facilities Planning Act, Ill.Rev.Stat. ch. 111–½, pars. 1152–1168.

B. The following provisions of the Ambulatory Surgical Treatment Center Licensing Requirements, 77 Ill.Admin.Code, § 205, subchap. b:

(1) 205.120(b)(5)–(7)—*Licensure*, enjoined to the extent that, provided that all information required under said section is maintained at the ASTC, the application need only include the name, address or telephone number of the owner(s), administrator(s) and medical director(s) of the ASTC.

(2) 205.125(b)(5)–(7)—*Application for License Renewal*, enjoined to the extent that, provided that all information required under said section is maintained at the ASTC, the application need only include the name, address or telephone number of the owner(s), administrator(s) and medical director(s) of the ASTC.

(3) 205.520(c)—*Preoperative Care*, enjoined to the extent said section requires tests to be performed by a qualified laboratory technician. (Relevant legal requirements regarding laboratory tests are found in the Clinical Laboratory Act, Ill.Rev.Stat. ch. 111–½, §§ 621–103 et seq.)

(4) 205.330—*Nursing Personnel*, enjoined to the extent that "surgical experience" as used in said section may be interpreted to exclude experience gained in a clinical facility providing abortion procedures.

(5) 205.410(c)—*Equipment*, enjoined to the extent that said section requires an ASTC that does not use inhalation anesthetic or medical gas to have written procedures to insure the safety in use or storage of such substances, provided that if intravenous sedation is used in accordance with the ASTC's program narrative, mechanical ventilation devices and intubation equipment must be available on site.

(6) 205.540(c)(1)–(3)—*Post Operative Care*, enjoined to the extent the requirements of said section would apply in circumstances where (1) no licensed hospital within 15 minutes from the ASTC ("nearby hospital") will allow admitting or practice privileges to abortion providers *and* (2) either the ASTC has a transfer agreement with a nearby hospital, or a physician practicing at the ASTC or the medical director of the ASTC has a professional working relationship or agreement, maintained in writing at the ASTC and verifiable by IDPH, with a physician who does have admitting or practice privileges at a nearby hospital, so as to assure availability of patient care in the event of medical complications ensuing from an abortion or a gynecological procedure related to an abortion.

(7) 205.710—*Abortions*, enjoined.

(8) 205.720—*Personnel*, enjoined.

(9) 205.730—*General Patient Care*, .730(a)(1), enjoined to the extent that said section requires any examination beyond a determination of the patient's blood Rh factor; .730(a)(3), enjoined; and .730(b), enjoined.

(10) 205.740—*Pre-operative Requirements*, enjoined.

(11) 205.760—*Reports*, enjoined.

(12) 205.1310(a)—*Plant and Service Requirements*, enjoined to the extent that said section requires that a proposed ASTC meet any requirements enjoined or not permitted pursuant to the provisions of this decree.

(13) 205.1320(a)(1)—*General Considerations*, enjoined to the extent that said section requires any physical marking that denotes the facility as an ASTC.

(14) 205.1350—*Admission Department and Public Areas*, enjoined, provided that the ASTC complies with all applicable federal and state handicap access laws, including, without limitation, the Illinois Environmental Barriers Act, Ill. Rev.Stat. ch. 111–½ ¶ 3711.

(15) 205.1360—*Clinical Facilities*, .1360(a)(1) [examination room], enjoined to the extent said section would require that the examination room (which need not be separate from the procedure room) be larger than minimally adequate

to accommodate the equipment required for the examination, to facilitate the examination safely, and to allow unobstructed ingress and egress to and from the room through the door that, if locked, can be opened from within the room;

.1360(b)(1) [procedure room], enjoined to the extent said section would require a room larger than 120 square feet with a minimum dimension of at least 10 feet, unless the ASTC demonstrates that a smaller room size is minimally adequate to accommodate all equipment required for the procedures, to perform the procedures safely, and to protect patients and staff in the event of fire or other emergency;

.1360(b)(2) [communication system], enjoined;

.1360(c)(2) [recovery room], enjoined to the extent said section would require a room larger than is necessary to accommodate the recovery beds or lounge chairs in the room, with a minimum of three feet between each bed or chair and an unobstructed passageway of a minimum of four feet clearance at one end each bed or chair;

.1360(c)(3) [drug distribution station, hand washing facility, charting facility, nurses' station and storage space for supplies and equipment], enjoined except that the ASTC must provide for direct visual supervision of the patients' recovery area;

.1360(c)(4) [toilet specifications], enjoined to the extent said section would require the inclusion of a toilet, a gray diverter valve or a fluid waste disposal in the recovery room if a toilet is reserved for only patient use and does not require recovery room patients to enter public areas or other patient care areas to access the toilet; and

.1360(c)(7) [minimum of four recovery beds or lounge chairs], enjoined to the extent said section would require the inclusion of more than three recovery beds or lounge chairs for each procedure room unless the ASTC's narrative program provides that no more than two procedures per hour will be performed per procedure room, in which case a mini-

mum of two recovery beds or lounge chairs for each procedure room is required.

(16) 205.1370—*Support Services,*

.1370(a) [control station], enjoined;

.1370(d) [scrub stations], enjoined to the extent said section requires a separate scrub station outside of the procedure room, provided that the procedure room contains a sink with handwashing capabilities;

.1370(e) [soiled workroom], enjoined to the extent that the section requires more than closed clean storage which prevents contamination by soiled materials and for separate storage and handling of soiled materials;

.1370(f) [fluid waste disposal], enjoined to the extent said section requires more than a toilet with a gray diverter valve, a sink exclusively used for fluid waste disposal, or a separate fluid waste disposal unit;

.1370(g) [workroom or supply room], enjoined to the extent said section requires more than facilities for closed clean storage;

.1370(h) [anesthesia storage], enjoined;

.1370(i) [medical gas storage], enjoined;

.1370(k) [changing areas—staff], enjoined to the extent that the section requires more than minimally adequate space for any changing or gowning required by the specific procedures that are being performed in accordance with the ASTC's narrative program;

.1370(*l*) [changing areas—patients], enjoined; and

.1370(n) [janitor's closet], enjoined to the extent that the section requires more than minimally adequate space for storage of cleaning supplies.

(17) 205.1380(b)(3) and (4)—*Diagnostic Facilities,* enjoined.

(18) 205.1400—*Details and Finishes,*

.1400(a)(1) [minimum corridor width], enjoined to the extent said section would require that the width of corridors in an ASTC exceed five feet;

.1400(b)(3) [minimum door width], enjoined to the extent said section would

require that the width of any doors in an ASTC exceed three feet;

.1400(d) [thresholds flush], enjoined, provided that the ASTC complies with all applicable federal and state handicap access laws, including, without limitation, the Illinois Environmental Barriers Act, Ill.Rev.Stat. ch. 111–½ ¶ 3711;

.1400(n) [ceiling finish], enjoined to the extent said section requires ceilings to be readily washable and without crevices, if ceilings are otherwise cleanable;

(19) 205.1410(d)(1)—*Construction, Including Fire–Resistive Requirements*, enjoined, provided that the ASTC complies with all applicable federal and state handicap access laws, including, without limitation, the Illinois Environmental Barriers Act, Ill.Rev.Stat. ch. 111–½ ¶ 3711.

(20 205.1540(a)–(q) and Table A—*Air conditioning, Heating and Ventilating Systems*, enjoined to the extent that said section requires more than that temperature be maintained between 68° and 80° Fahrenheit.

(21) 205.1750(b)—*Receptacles*, enjoined.

4. Following the entry of the Consent Decree, (1) defendants may enforce those specific portions of the Medical Practice Act ("MPA"), the Health Facilities Planning Act ("HFPA"), and the Ambulatory Surgical Treatment Center Act ("ASTCA") not enjoined herein; (2) defendants shall not enforce Section 22(1)(a)–(e) of the MPA as presently codified; (3) defendants' enforcement and non-enforcement of Sections 1152–1168 of the HFPA as presently codified shall be consistent with the injunctions set forth in paragraphs 1 through 3 above; and (4) defendants' future regulation under and enforcement and non-enforcement of the present provisions of the ASTCA shall be consistent with the injunctions and specifications in paragraphs 1 through 3 above, and further shall be limited as follows:

(A) With respect to any person or facility that offers or performs abortions in any ASTC described in paragraphs 2 and 3 above, defendants may promulgate and enforce regulations implementing the requirements of paragraphs 2 and 3 above ("implementing regulations");

(B) With respect to any person or facility that offers or performs abortions in any ASTC described in paragraph 3 above, defendants may promulgate, implement and enforce future regulations under the ASTCA, which are different from and additional to the requirements in paragraph 3 and the implementing regulations ("paragraph 3 future regulations") only when a change in medical or scientific knowledge requires paragraph 3 future regulations in order to insure against a significant health or safety risk to the welfare of a woman undergoing an abortion as permitted in such ASTC, and further provided that no paragraph 3 future regulations shall (i) restrict access to the procedure, either by materially increasing the cost of the procedure or materially reducing the number of facilities without resulting in more than a marginal increase in safety; (ii) interfere with the safety of the procedure as determined by accepted medical practice; or (iii) prevent a physician from exercising medical discretion, within accepted medical practice and within the scope of the facility, to provide a patient with appropriate care given the unique circumstances presented by her health situation; and

(C) With respect to any person or facility performing an abortion in any ASTC described in paragraph 2 above, defendants may promulgate, implement and enforce future regulations which govern all such ASTCs ("paragraph 2 future regulations"), however, if any paragraph 2 future regulations are specifically directed at the abortion procedure, as opposed to all procedures done in such facility, defendants may promulgate, implement and enforce such paragraph 2 regulations only when a change in medical or scientific knowledge requires paragraph 2 future regulations in order to insure against a significant health or safety risk to the welfare of a woman undergoing an abortion as permitted in such ASTC, and further provided that no paragraph 2 future regulations shall (i) restrict access to the procedure, either by materially increasing the cost of the procedure or materially reducing the number of facilities without resulting in more than a marginal increase in safety; (ii) interfere

with the safety of the procedure as determined by accepted medical practice; or (iii) prevent a physician from exercising medical discretion, within accepted medical practice and within the scope of the facility to provide a patient with appropriate care given the unique circumstances presented by her health situation.

5. With respect to the number of weeks assessed gestational age set forth in paragraph 3 and 4 above, the parties stipulate that said figure has been determined by the Illinois Department of Public Health and is based on an assessment of risk to the health and safety of women as evidenced by available published data, present surgical and medical procedures commonly used and constituting acceptable medical practice, and the standards and guidelines of professional medical and health organizations. Following the entry of this Consent Decree, the plaintiffs and the Director of the IDPH expressly reserve the right to seek modification by the Court of said figure upon a showing that the further development of medical or scientific knowledge, including the basis of assessment set forth above, evidences that abortions and related gynecological procedures may be or should be performed within a different number of weeks in the facilities defined in paragraph 3, on the basis that such a change would not pose or will eliminate a significant risk to the health or safety of women obtaining such services.

6. The Court retains jurisdiction to enforce compliance with the provisions of this Consent Decree.