94 F.3d 647
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Richard M. RAGSDALE, M.D., et al., Plaintiffs-Appellees,
Cross-Appellants,
v.
John R. LUMPKIN, M.D., Director of the Illinois Department
of Public Health, James E. Ryan, Attorney General of
Illinois, and Nikki M. Zollar, Director of the Illinois
Department of Professional Regulation,
Defendants-Appellants, Cross-Appellees,
and
Jack O'Malley, State's Attorney of Cook County, Illinois, as
representative of the class of all Illinois
State's Attorneys, Defendants-Appellees,
Cross-Appellees.
 No. 95-2256, 95-2320.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 7, 1996.
Decided Aug. 6, 1996.
 
 Before POSNER, Chief Judge, and FAIRCHILD and FLAUM, Circuit Judges.
 
 ORDER
 
 1
 The principal question on this appeal is whether there was an abuse of discretion in determining the amount of an award of attorney's fees to prevailing plaintiffs in a § 1983 action.
 
 
 2
 In 1985 plaintiffs brought action challenging the constitutionality of three Illinois statutes and the regulations thereunder which allegedly required all abortions to be performed in a hospital or its functional equivalent. The district court certified a plaintiff class consisting of all duly licensed physicians and surgeons performing pregnancy terminations in Illinois, represented by plaintiff Ragsdale. Another class consisted of Illinois women of child-bearing age who desire or may desire to obtain an abortion, represented by plaintiffs Moe and Ragsdale. The district court granted a preliminary injunction enjoining defendant state officials and a defendant class consisting of state's attorneys for all Illinois counties from enforcing the challenged statutes and regulations against any plaintiffs who offer to perform first or early second trimester abortions. Ragsdale v. Turnock, 625 F.Supp. 1212 (N.D.Ill.1985) "Ragsdale I." On appeal this court decided that because the state had conceded that a second trimester hospitalization requirement was unconstitutional and had ceased to enforce it, that part of the challenge was moot, and vacated the preliminary injunction to that extent. In all other respects the injunction was affirmed. Ragsdale v. Turnock, 841 F.2d 1358 (7th Cir.1988) "Ragsdale II."
 
 
 3
 Defendants appealed to the Supreme Court of the United States. The Court accepted the case for oral argument, postponing the question of jurisdiction until hearing on the merits. Turnock v. Ragsdale, 492 U.S. 916 (1989). After briefing, but before argument, the parties negotiated a settlement and produced a consent decree. The Supreme Court deferred the matter pending submission of the consent decree to the district court for approval. Turnock v. Ragsdale, 493 U.S. 987 (1989).
 
 
 4
 The district court gave notice, conducted a fairness hearing, and approved and entered the proposed consent decree. Ragsdale v. Turnock, 734 F.Supp. 1457, 1465 (N.D.ILL.1990). "Ragsdale III."
 
 
 5
 Two persons who had sought to intervene appealed from the denial of their motion. Two purported members of the plaintiff class also appealed. This court affirmed the denial of intervention and dismissed the appeals. Ragsdale v. Turnock, 941 F.2d 501, 506 (7th Cir.1991), cert. denied sub nom Murphy v. Ragsdale, 502 U.S. 1035 (1992). Ragsdale IV. The Supreme Court later dismissed the appeal from Ragsdale II under its Rule 46. Turnock v. Ragsdale, 503 U.S. 916 (1992).
 
 
 6
 The Consent Decree had reserved the matter of attorney's fees. On April 20, 1995, after efforts by the parties to agree on the issue had failed, the district court made an award of $992,120.87 in favor of plaintiffs and against the State. This amount represented costs (expenses) of $57,640.13 and fees of $934,480.74, being some $533,000 computed at rates contemporary with the services, plus interest. The allowed fee charges covered 4388.77 hours of service, primarily in 1985, '86, '88, '89, and '90. The attorneys devoting the most hours, each in excess of 100, were Attorneys Connell, 1545.45, Chaiten, 1465.67, Gilbert 428.90, Kornfield, 504.10, and Grossman, 141.20. Seven other attorneys, one paralegal, and a librarian devoted varying numbers of hours, ranging from the librarian's 6 hours to Attorney Franklin's 79.75 hours, for a total of 303.45. No fees were requested or allowed for services defending the consent decree on appeal here ("Ragsdale IV ").
 
 
 7
 The state-officer defendants (hereinafter "State Defendants") brought this appeal, challenging the amount allowed and the decision to enter the award against the state alone, rather than apportioning some of it against the state's attorneys, so that the counties would pay that part. Plaintiffs cross-appealed, contending that liability should be imposed jointly and severally on all defendants, including the state's attorneys. These were submitted to the panel which had decided Ragsdale IV, as successive appeals under Operating Procedure 6(b). The panel elected to retain and decide, and after examination of the briefs and the record unanimously finds that oral argument is unnecessary. An appeal by others was dismissed for lack of standing, No. 95-2255, dismissed February 16, 1996.
 
 I. Apportionment
 
 8
 There are three views concerning allocation of liability for plaintiffs' attorneys' fees. Plaintiffs contend that all the defendants, the State Defendants as well as the State's Attorneys, stood ready to enforce the challenged statute and regulations and defended their constitutionality; thus all should be jointly and severally liable for plaintiffs attorney's fees. The State Defendants contend that because the State Attorneys fully litigated as an independent party and consented to injunctive relief which the State Defendants could not have provided, the liability should have been apportioned equally between the State Defendants (the state) and the State's Attorneys (the counties). The State's Attorneys support Judge Nordberg's decision to impose the liability on the state alone.
 
 
 9
 In deciding to impose liability on the state, Judge Nordberg adhered to his own analysis in a similar case he had decided, Herbst v. O'Malley, 1995 U.S.Dist.,
 
 
 10
 LEXIS 1510 (N.D.Ill., Feb. 7, 1995). Herbst was an action brought by a class of Illinois physicians and a class of Illinois women against the Attorney General and Director of the Department of Public Health and a class of all State's Attorneys, challenging certain statutory provisions concerning abortion. Judge Nordberg concluded that the State's Attorneys would have been acting as state agents in enforcing the laws in question and held that judgment for attorney's fees should be entered against the state rather than jointly and severally against all defendants.
 
 
 11
 The briefs informed us that Herbst was on appeal, and we awaited that decision. This court has now affirmed. Herbst v. Ryan, --- F.3d ----, No. 95-1611, 1733, decided July 26, 1996. We there adopted the view "that deferential review of a district court's allocation of liability for a fee award among multiple parties is warranted." Herbst, slip op. at 7. The issue "is whether the district court abused its discretion in determining that the State alone ought to bear the responsibility for the fee award." Herbst, slip op. at 11,--we concluded that there was "no abuse of discretion in determining that the 'moving force' behind the statute at issue here was the State of Illinois."
 
 
 12
 We see no principled distinction between Herbst and Ragsdale in terms relevant to the allocation of liability for plaintiffs' fees. In enacting the challenged statutes, the state was setting policy and the State's Attorneys were standing ready to enforce the state's enactment. In each case the state's enactments were determined to have violated constitutional rights. In each case Judge Nordberg gave controlling weight to the proposition that the State's Attorneys would have been acting as state agents in enforcing the enactments. Herbst establishes that the apportionment is a matter of discretion, to be exercised after consideration of factors outlined in Herbst. It also establishes that the imposition of liability on the state in the Herbst situation (and necessarily in the parallel Ragsdale situation) is not an abuse of discretion.
 
 II. Amount Allowed
 
 13
 The State Defendants concede that plaintiffs are prevailing parties and entitled to a reasonable fee. They do not challenge the hourly rates used, nor the computation of interest. They make an argument for reducing the award overall because plaintiffs obtained less relief than originally sought. They attack specific allowances, focusing on four areas of activity. Although their reply brief says they also focus on vague entries and they had objected on this basis before the district court, their appellate brief does not direct attention to particular entries they challenge for vagueness.
 
 
 14
 A. Results Obtained.
 
 
 15
 The complaint in part (Paragraph 58) alleged that three Illinois statutes and regulations placed a significant burden on women who choose to terminate first trimester and second trimester pregnancies in violation of their constitutional right of privacy and (Paragraph 59) prevented physicians and registered nurses from performing abortions in facilities available to others in performing medically analogous services in violation of their right to equal protection of the law. As relief, plaintiffs sought a declaratory judgment that these statutes and regulations deprived plaintiffs of those rights, and injunctions against enforcement of the statutes or regulations in derogation of those rights.
 
 
 16
 The consent decree (which is attached to Ragsdale III, 734 F.Supp. at 1466-1470) does enjoin enforcement of many provisions of the three statutes and regulations, but leaves some areas in which the defendants are free to act. There is a division between facilities where abortions are performed beyond 18 weeks gestational age or under specified conditions and those that perform abortions within 18 weeks gestational age, under local anesthesia. Regulatory and licensing powers are broader as to the later stage abortions and some licensing power is permitted as to earlier stage abortions. 734 F.Supp. 1460.
 
 
 17
 Because the decree leaves State Defendants free to exercise these powers, they contend that full compensation for the time claimed is excessive. They apparently rely on a Supreme Court pronouncement in Hensley v. Eckerhart, 461 U.S. 424 (1983): "A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole." Id. at 440. See Illinois Welfare Rights Organizations v. Miller, 723 F.2d 564, 567 (7th Cir.1983).
 
 
 18
 Hensley, however, stated other general conclusions, as well. Referring to cases which present no unrelated claims, it was said,
 
 
 19
 [T]he plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.
 
 
 20
 Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit....
 
 
 21
 461 U.S. at 435.
 
 
 22
 We reemphasize that the district court has discretion in determining the amount of a fee award. This is appropriate in view of the district court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters. It remains important, however, for the district court to provide a concise but clear explanation of its reasons for the fee award. When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained.
 
 
 23
 Id. at 437.
 
 
 24
 In compliance with Hensley, Judge Nordberg made plain his reasons for granting a fully compensatory fee even though plaintiffs' prayer for relief was broader than the scope of the injunction incorporated in the consent decree. He found that the consent decree granted plaintiff substantial relief when compared with the relief sought in the complaint. Responding to State Defendants' argument that plaintiffs obtained roughly 50% of the relief they sought, he "disagree[d] with Defendants' characterization of Plaintiffs' success as well as the conclusion Defendants would draw from that characterization." He found that plaintiffs "achieved an excellent result." He stated,
 
 
 25
 There is no distinction between the relief sought by Plaintiffs in their complaint and the relief obtained by Plaintiffs in the consent decree upon which the Court could conclude that some of the work performed by Plaintiffs' lawyers was not "expended in pursuit of the ultimate result achieved." (quoting from Hensley at p. 435, quoting from Davis v. County of Los Angeles, 8 E.P.D. p 9444 at 5049 (C.D.Cal.1974).
 
 
 26
 We find no abuse of discretion in awarding a fully compensatory fee.
 
 
 27
 Plaintiffs claimed that the statutes and regulations interfered with their constitutional rights. The consent decree in substance established as much. If the consent decree be viewed as recognition that the enforcement of the statutes and regulations could be tailored so as not to interfere with those rights, plaintiffs nevertheless accomplished much of, perhaps all, their goal.
 
 B. Services In Preparation of Complaint
 
 28
 Plaintiffs claimed 191 hours, spent from March 10 to June 28, 1985. There were 118 entries by four attorneys. The entries are reasonably detailed and include conferences with clients and others, conferences among attorneys, review of the statutes and regulations under attack, including legislative history, research of law, of issues concerning class actions, and use of pseudonyms, and outlining, drafting, and repeated revisions of the 26 page complaint. Judge Nordberg disallowed entries for meetings totalling 7.1 hours where he was unable to determine the subject matter or effort appeared to be duplicated. In other respects he found the explanation to be adequate and the time spent to "appear reasonable in light of the issues presented."
 
 
 29
 State Defendants argue that the disallowance was insufficient. They devote less than a page in telling why. They point to a total of 39.75 hours spent by 2 or 3 attorneys on 6 days in April and June 1985 in conferences, and in excess of 50 hours devoted by those attorneys in drafting and revision. They appear to claim, without further analysis, that the allowance made must include "duplicate, redundant or excessive efforts." Judge Nordberg found the time reasonable, and we cannot say there was an abuse of discretion.
 
 
 30
 Our review must be highly deferential. Hensley, 461 U.S. at 437; McNabola v. Chicago Transit Authority, 10 F.3d 501, 518 (7th Cir.1993); Ustrak v. Fairman, 851 F.2d 983, 989 (7th Cir.1988).
 
 
 31
 We make two observations which apply to this and other challenges by the State Defendants. They infer from two choices of phrasing made by Judge Nordberg that he thought it was their burden to demonstrate the unreasonableness of hours claimed. To the contrary, the judge wrote, "The Court will consider each objection, mindful that Plaintiffs bear the burden of substantiating the reasonableness of the hours expended." He cited McNabola, the same case cited by State Defendants.
 
 
 32
 Secondly, plaintiffs had furnished detailed itemized contemporaneous entries of time spent by the respective attorneys. All were verified by affidavit or declaration of the attorney who rendered or supervised the service. Attorney Connell asserted in her affidavit that she had reviewed all the time sheets and had "eliminated any time billed for duplicative or unproductive efforts, including a write-off of more than 2500 hours of time actually expended." This statement afforded general support for the proposition that duplicative and unproductive time was not claimed.
 
 
 33
 C. Services on appeal, prior to oral argument (Ragsdale II )
 
 
 34
 Plaintiffs claimed 500.4 hours, spent from December 30, 1985 to July 28, 1986. There were 210 entries by four attorneys (plus 9.5 hours by a fifth). The entries include work on inclusion of materials in the record, reading transcript, reviewing appellants' brief, preparation and revision of appellees' brief, review of amicus brief, review of Thornburgh v. American College of Obstetricians & Gynecologists, 476 U.S. 747, decided June 11, 1986, and preparation of a supplemental brief concerning Thornburgh in response to this court's request. Judge Nordberg disallowed approximately 55 hours, for the most part because he considered some of the services duplicative and some product replaced by later revisions. State Defendants argue there should have been further reductions because three or four attorneys conferred on seven dates, three attorneys read the state brief, five attorneys made entries for drafting, reviewing, revising and cite checking appellees' brief, and four attorneys claimed 35 hours for work on the Thornburgh brief. Judge Nordberg found that except for the hours disallowed, the hours claimed were reasonable. State Defendants' comment on the number of attorneys who shared the work, and the amount of time involved, do not persuade us that there was clear error or an abuse of discretion. Division of responsibility among attorneys and conferencing among them may well be a reasonable course.
 
 D. Oral Argument (Ragsdale II )
 
 35
 Plaintiffs claimed 83.5 hours. Two quarter-hours were spent in August in discussion with an opposing attorney concerning scheduling of oral argument. There were 42 entries from September 4 to October 22, 1986, the date of argument. Four attorneys made entries, including review of briefs, outlining argument, review of testimony, preparation conferences and "moot of oral argument," evidently rehearsals with questioning, on October 10 and 16.
 
 
 36
 Judge Nordberg disallowed .25 hours on October 21 where the subject of an office conference was not stated. He found that all other hours appear reasonable. State Defendants contend there should have been further deductions. Their one half page on this subject notes that the four attorneys participated in two moot arguments, three continued to prepare although only one argued and two attorneys who did not argue charged for attending the argument. They cite a case where we cut a claim of 38 hours of time for preparation for oral argument to 16. Ustrak v. Fairman, 851 F.2d 983, 987 (7th Cir.1988). We characterized the case as "involving simple facts, a three-day trial, and legal issues of limited (though not trivial) scope and novelty." Ragsdale II was a far different case. We are unable to find clear error or abuse of discretion here.
 
 E. Supreme Court Preparation
 
 37
 Plaintiffs claimed 1245.7 hours, spent from November 14, 1988 to February 27, 1989 and from June 28 to October 14, 1989, shortly before the reopening of settlement negotiations and the postponement of argument before the Supreme Court. There were 331 entries by six attorneys. The entries include review and conferences concerning Supreme Court jurisdiction, preparation of motion to dismiss and brief, review of the opinion in Webster [Webster v. Reproductive Services, 492 U.S. 490, was decided July 3, 1989], conferences with attorneys doing amicus briefs, review of record, preparation of brief and appendix, research, including levels of scrutiny, review of O'Connor opinions, review of state's and amicus briefs.
 
 
 38
 Counsel for plaintiffs remind us, as they did Judge Nordberg, of "the tension and the atmosphere, including nationwide media scrutiny, under which Ragsdale and its companion cases were briefed" and the doubts as to the continued viability of Roe v. Wade, 410 U.S. 113 (1973), prior to the decision on June 29, 1992 of Planned Parenthood of S.E. Pa. v. Casey, 505 U.S. 833 (1992). Judge Nordberg "agree[d] with Plaintiff that the novelty of some of the issues presented and the importance of the abortion issue justified a massive effort." Except for 5.5 hours which represented several conferences where the judge could not determine the subject matter or the like, Judge Nordberg found that his "review of the time expended in preparing for Supreme Court argument did not reveal any unreasonable expenditures of time."
 
 
 39
 State Defendants' one-page challenge to the hours allowed seems founded solely on frequent telephone and office conferences between two and three of plaintiffs' attorneys, on three attorneys working on a motion in the Supreme Court, on five attorneys participating in "drafting, reviewing, revising and talking about" plaintiffs' brief, involving "hundreds of hours." These facts do not persuade us that there was an abuse of discretion. Plaintiffs point to a number of names on the briefs of State Defendants. "The court can look to how many lawyers the other side utilized in similar situations as an indication of the effort required." Ramos v. Lamm, 713 F.2d 546, 554 (10th Cir.1983). State Defendants made no showing that work on their side of the case required fewer lawyers, fewer conferences among them, and less time.
 
 
 40
 Plaintiffs do concede that six hours were mistakenly billed and should be subtracted. These were entries in 1986 by a lawyer whose contemporaneous hourly rate was $98. Thus the total was $588. Adding compound interest computed in the manner used in this case, the result is approximately $1200.
 
 
 41
 The award of attorney's fees is reduced by $1200 and as so modified the judgment is affirmed. Plaintiffs did not prevail on their cross-appeal. Each party will bear his own costs of appeal. Plaintiffs have not requested an allowance for attorney's fees for work on this appeal.